**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JERRY DURR,**

                                        **Plaintiff,**

                    **vs.**

                                                            **5:20-CV-00662**
                                                            **(MAD/TWD)**

**DANIEL SLATOR,** *Police Officer*;
**WILLIAM CLARK,** *Police Sergeant*;
**CITY OF ONEIDA, NEW YORK;**
**AARON SILVERMAN,** *Sheriff's Deputy*;
**and MADISON COUNTY, NEW YORK,**

                                        **Defendants.**
_____

**AARON SILVERMAN,** *Sheriff's*
*Deputy*; **and MADISON COUNTY,**
**NEW YORK,**

                                        **Cross-Plaintiffs,**

                    **vs.**


**DANIEL SLATOR,** *Police Officer*;
**WILLIAM CLARK,** *Police Sergeant*;
**and CITY OF ONEIDA, NEW YORK,**

                                        **Cross-Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**LAW OFFICE OF DAVID**                    **DAVID A. LONGERETTA, ESQ.**
**A. LONGERETTA, PLLC**

298 Genesee Street
Utica, New York 13502
Attorneys for Plaintiff

**LAW OFFICE OF ZACHARY**       **ZACHARY C. OREN, ESQ.**
**C. OREN, ESQ.**
401 Rutger Street
Utica, New York 13501
Attorneys for Plaintiff

**KENNEY SHELTON LIPTAK NOWAK LLP**  **DAVID H. WALSH, IV, ESQ.**
4615 North Street                              **DANIEL CARTWRIGHT, ESQ.**
Jamesville, New York 13078
Attorneys for Defendants Daniel Slator,
William Clark, and City of Oneida

**MARTIN, RAYHILL LAW FIRM**      **KEVIN G. MARTIN, ESQ.**
421 Broad Street
Utica, New York 13501
Attorneys for Defendants
Aaron Silverman and Madison County

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Jerry Durr, brought this action on June 12, 2020, asserting thirteen causes of

action pursuant to 42 U.S.C. §§ 1983, 1988, 12132, and the Fourth, Fifth, Sixth, and Fourteenth

Amendments of the United States Constitution against Defendants Officer Daniel Slator, Sergeant

William Clark, the City of Oneida, New York, Sheriff's Deputy Aaron Silverman, and Madison

County, New York.  Dkt. Nos. 1, 5.  Plaintiff's claims arise out of his arrest on March 15, 2019,

and his subsequent detainment.  Dkt. No. 5.  On September 29, 2020, Defendants Slator, Clark,

the City of Oneida (hereinafter the "City Defendants") filed a pre-answer motion to dismiss.  Dkt. No. 18.  On October 21, 2020, Defendants Silverman and Madison County (hereinafter the "County Defendants") filed a motion for judgment on the pleadings.[1]  Dkt. No. 30.

Currently before the Court are the City Defendants' motion to dismiss and the County Defendants' motion for judgment on the pleadings.  Dkt. Nos. 18, 30.  Based on the following, the City Defendants' motion to dismiss and the County Defendants' motion for judgment on the pleadings are both granted in part and denied in part.

## II. BACKGROUND

### A.    Facts

On March 15, 2019, Plaintiff was obstructing traffic and yelling in the roadway of Lenox Avenue, in Oneida, New York.  Dkt. No. 5 at ¶ 10.  Plaintiff has been diagnosed with, and receives social security disability benefits for, bipolar depression and attention deficit disorder. *Id*. at ¶ 37.  On March 15, 2019, Plaintiff had not taken his medication and asserts that he was having a psychotic episode.  *Id*. at ¶¶ 10, 39.  Additionally, Plaintiff asserts that he was exhibiting erratic behavior sufficient to have classified him as a mentally disturbed person.  *Id*. at ¶ 13.

Defendants Slator and Silverman arrived at the scene and Defendant Slator arrested Plaintiff.  *Id*. at ¶¶ 11-14.  Plaintiff consented to being handcuffed but then spit toward Defendant

---

[1] In a footnote, Plaintiff raises the issue of the ethical considerations of Attorney Kevin Martin representing both Defendants Silverman and Madison County.  Dkt. No. 32 at 17, n.8.  Plaintiff requests that the Court undertake *Dunton* procedures to ensure that Defendant Madison County will indemnify Defendant Silver, and if not, that Defendant Silverman be provided separate legal counsel.  *Id*. (citing *Dunton v. County of Suffolk*, 729 F. 2d 903 (2d Cir. 1984)).  The Court rejects Plaintiff's requests and notes that if Plaintiff would like to challenge Attorney Martin's ability to represent both County Defendants, he must do so via formal motion.

Slator.  *Id*. at ¶¶ 15-17.  Defendant Silverman kicked Plaintiff while he was handcuffed, dislocating Plaintiff's knee, and causing him to fall to the ground in pain.  *Id*. at ¶¶ 19-20. Defendants Slator, Clark,[2] and Silverman then took Plaintiff to Oneida Healthcare for treatment for his knee via ambulance.  *Id*. at ¶¶ 24, 26.  Plaintiff was subsequently discharged with instructions that he be transferred to the Upstate Emergency Department because Oneida Healthcare did not have orthopedic services.  *Id*. at ¶ 27.

Rather than bring Plaintiff to the Upstate Emergency Department, Plaintiff was placed in a cell at the Oneida City Police Station.  *Id*. at ¶ 28.  While in his cell, Plaintiff's knee began to swell and became so painful that he could not use the toilet and twice defecated on himself.  *Id*. at ¶¶ 29-30.  After the second time, Defendant Clark asked Plaintiff why he defecated on himself, and Plaintiff responded that he could not get up due to his knee and that he would clean it up.  *Id*. at ¶ 31.  Plaintiff was then charged for criminal tampering in the third degree for defecating on the floor and throwing toilet paper covered in his feces on the walls.  *Id*. at ¶ 32; Dkt. No. 5-1.

On June 12, 2020, Plaintiff brought this action asserting claims for excessive force against Defendants Slator and Silverman; deliberate indifference to Plaintiff's serious medical condition against Defendants Slator, Silverman, and Clark; violation of Title II of the Americans with Disabilities Act against all Defendants; and failure to intervene for a constitutional violation against all Defendants in violation of 42 U.S.C. §§ 1983, 12132.  Dkt. No. 5 at ¶¶ 10-77. Additionally, Plaintiff asserts a *Monell* claim against Defendants City of Oneida and Madison

---

[2] It is unclear at what point Defendant Clark arrived at the scene.

County for a failing to investigate, supervise, and discipline Defendants Slator, Clark, and Silverman. *Id*. at ¶¶ 78-83. Finally, Plaintiff asserts claims for assault, negligence, and violations of New York Human Rights Law § 28 for failure to provide medical care and mental health assistance against Defendants. *Id*. at ¶¶ 84-132.

On September 30, 2020, the City Defendants filed a pre-answer motion to dismiss. Dkt. No. 18. On October 21, 2020, the County Defendants filed a motion for judgment on the pleadings. Dkt. No. 31. On November 23, 2020, Plaintiff filed oppositions to both the City Defendants' motion to dismiss and the County Defendants' motion for judgment on the pleadings. Dkt. Nos. 31, 32. The City Defendants filed a reply on December 1, 2020. Dkt. No. 34. The County Defendants filed a reply on December 7, 2020. Dkt. No. 35.

## III. DISCUSSION

### A.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the

pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

"In deciding a Rule 12(c) motion, we 'employ[ ] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6).'" *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)) (alterations in original).

"Thus, we will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Id*. at 43-44 (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)).  "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 678).

**B.      Plaintiff's Claims for Excessive Force**

Plaintiff claims that Defendants Slator and Silverman engaged in an excessive use of force when Defendant Silverman kicked Plaintiff while he was handcuffed.  Dkt. No. 5 at ¶¶ 19-22. The City Defendants assert that Plaintiff's claim must be dismissed against Defendant Slator because he was not personally involved in the use of excessive force.  Dkt. No. 18 at 6-8.  The County Defendants assert that Plaintiff's claim must be dismissed because the act of sweeping Plaintiff's leg was not unreasonable, and Plaintiff's pre-existing knee condition was the primary reason for his injury.  Dkt. No. 30-6 at 8-10.  Based on the following, the City Defendants' motion to dismiss is granted and the County Defendants' motion for judgment on the pleadings is denied.

*1. Reasonableness of Force*

"Excessive force claims related to an arrest or seizure are evaluated under the Fourth Amendment using an 'objective unreasonableness' standard."  *Bogart v. City of New York*, No. 13-cv-1017, 2016 WL 4939075, *7 (S.D.N.Y. Sept. 6, 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  "Excessive force claims asserted in the 'non-seizure, non-prisoner context' are analyzed under the Due Process Clause of the Fourteenth Amendment using a more stringent

'shocks the conscience' standard." *Id.* (quoting *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995)); *see also Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these claims fall outside of the Fourth Amendment protections applied in *Graham* . . . and are governed instead by the Due Process Clause of the Fourteenth Amendment").  Since the force used in the present matter occurred during Plaintiff's arrest, his claims are properly analyzed under the reasonableness standard set forth in *Graham*. *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 342 (E.D.N.Y. 2006) (applying the Fourth Amendment reasonableness standard to force used while the plaintiff was handcuffed and allegedly resisting arrest).

"'The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).  "The 'proper application' of this standard 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).  The reasonableness determination must include consideration of the fact that law enforcement officers often are forced to make quick decisions under stressful and rapidly evolving circumstances rendering the calculation of what amount of force is reasonable difficult.  *See Graham*, 490 U.S. at 396-97.  Relevant factors include the

severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. *See Brown*, 798 F.3d at 100 (citing *Graham*, 490 U.S. at 396).

Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force. *See Feliciano v. Thomann*, 747 Fed. Appx. 885, 887 (2d Cir. 2019). Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were *de minimis*. *See Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004). Nevertheless, while "not every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (citing *Graham*, 490 U.S. at 396), a show of force by an officer that is overly disproportionate to the risk of harm may support a claim for excessive force. *See Gersbacher v. City of New York*, No. 1:14-cv-7600, 2017 WL 4402538, *11 (S.D.N.Y. Oct. 2, 2017) (denying the defendant police officers' motion for summary judgment on the plaintiff's excessive force claim where evidence showed that the plaintiff verbally opposed the arrest, but did not attempt to flee or attack the arresting officer, calling into question whether the force used by the arresting officer, which caused relatively minor injuries, was excessive). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown*, 798 F.3d at 100-01.

Defendant Silverman asserts that sweeping Plaintiff's knee was not an excessive use of force because Plaintiff spit at Defendant Slator which could have proven deadly to Defendants

Slator and Silverman due to the existence of "AIDS and other communicable diseases."[3]  Dkt. No. 30-6 at 8.  Further, Defendant Silverman asserts that kicking a handcuffed arrestee is far less conscious shocking than other conduct previously found to be *de minimus*.  *Id*.  However, the County Defendants cite cases involving incidences between prison guards and inmates, not police officers and arrestees.  *See id*. at 9.  Such cases apply the Fourteenth Amendment's more stringent "shocks the conscious" standard rather than the Fourth Amendment's reasonableness standard.  *See Bogart*, 2016 WL 4939075, at *7.

Additionally, Plaintiff alleges that Defendant Silverman kicked Plaintiff after he had already consented to, and had been, handcuffed.  Dkt. No. 5 at ¶¶ 15-17.  While Defendant Silverman may have only kicked Plaintiff once, courts have distinguished between kicking an arrestee prior to and following their handcuffing.  *See Ostroski*, 443 F. Supp. 2d at 342 (citing *Pierre-Antoine v. City of New York*, No. 04 CIV. 6987, 2006 WL 1292076, *4 (S.D.N.Y. May 9, 2006); *Graham v. Springer*, No. 03–CV–6190, 2005 WL 775901, *6 (W.D.N.Y. Apr. 5, 2005); *Jones v. Ford*, No. 00–CV–0934, 2002 WL 1009733, *4 (M.D.N.C. Feb. 15, 2002)).  Even one kick may be an excessive use of force once an arrestee has been handcuffed and subdued.  *Graham*, 2005 WL 775901, at *6 ("If the Court accepts plaintiff's version as true, which it must, it cannot say that the kick or kicks were objectively reasonable as a matter of law").

---

[3] It is important to note that Plaintiff's arrest was effectuated almost a year prior to the Coronavirus pandemic and therefore the Defendant Officers' fear of "other communicable diseases" did not include Coronavirus.

While Defendants claim that Plaintiff spitting toward Defendant Slator created exigent circumstances that could have potentially proven fatal to Defendants, spitting does not give rise to an excusable use of force *per se*. *See* Dkt. No. 30-6 at 8, 13. In *Roguz*, the District of Connecticut denied summary judgment for the defendants on the plaintiff's excessive force claim where the defendant officers punched the plaintiff in the face after he was handcuffed despite claiming that the plaintiff was actively resisting arrest and spitting at the defendants both before and after being handcuffed. *Roguz v. Walsh*, No. 09-cv-1052, 2012 WL 6049580, *4 (D. Conn. Dec. 5, 2012). The court determined that the conflicting testimony created a factual dispute for the jury as the plaintiff testified that he was not resisting arrest and was only spitting the blood out of his mouth after the defendants attacked him. *Id.*

Plaintiff claims that he consented to his arrest for obstructing traffic, and while he was handcuffed, he was kicked with sufficient force to dislocate his knee, immobilize him, and require emergency medical services.[4] Dkt. No. 5 at ¶¶ 19-24. At this stage of litigation, such allegations are sufficient to establish that Defendant Silverman's use of force was plausibly unreasonable. The County Defendants' motion for judgment on the pleadings is denied.[5]

_____

[4] The County Defendants assert that Plaintiff's injuries stemmed from a pre-existing medical condition. Dkt. No. 30-6 at 9. However, there is no evidence or assertion in the pleadings that Plaintiff had a pre-existing medical condition regarding his knee. *See generally* Dkt. No. 5.

[5] In the alternative Plaintiff asserts that Defendant Silverman failed to intervene during the excessive use of force. However, Plaintiff may not assert that Defendant Silverman failed to intervene because Plaintiff alleges that Defendant Silverman was directly involved because he actually engaged in the use of excessive force by kicking Plaintiff. *Cuellar v. Love*, No. 11-CV-3632, 2014 WL 1486458, *8 (S.D.N.Y. Apr. 11, 2014) ("Of course, where the officer is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable"). As such, Plaintiff's claim for failure to intervene during the use of excessive force

### 2. *Qualified Immunity*

The County Defendants further assert that Defendant Silverman is shielded from liability based on qualified immunity.  Dkt. No. 30-6 at 10-13.

Qualified immunity is an affirmative defense and, as such, Defendants bear the burden of proving that the privilege of qualified immunity applies.  *See Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 50, 60-61 (2d Cir. 2009)).  The Court is mindful that qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation,'" and that this privilege is "'effectively lost if a case is erroneously permitted to go to trial.'"  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts engage in a two-part inquiry to determine whether the doctrine of qualified immunity bars a suit against government officials.  *See Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006).  First, a court must consider whether the facts, construed in favor of the party asserting the injury, "demonstrate a violation of a constitutional right."  *Id.* (citing *Saucier v. Katz*, 533 U.S.

---

is dismissed.  The County Defendants' motion for judgment on the pleadings is therefore granted as to Plaintiff's failure to intervene claim.

194, 201 (2001)).  Second, a court must also determine "whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  Courts may exercise their discretion in deciding which prong should be considered first.  *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009).

A right is clearly established if its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  An official's actions are not protected by qualified immunity by virtue of the fact that the action in question has not previously been held unlawful.  *See id.*; *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) ("An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury").  "[I]f decisions from this or other circuits clearly foreshadow a particular ruling on the issue," the court may treat the law as clearly established.  *See Terebesi*, 764 F.3d at 231 (internal quotation marks omitted) (stating that the courts "consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law" in determining whether the law is clearly established) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)).

"It is well established that qualified immunity may operate as a defense to excessive force claims."  *Betts v. Rodriquez*, No. 15-CV-3836, 2017 WL 2124443, *4 (S.D.N.Y. May 15, 2017).

"Even if the force is objectively unreasonable, an officer may still be eligible for qualified immunity if it was objectively reasonable for the officer to *believe* that her action did not violate clearly established law."  *Keene v. Schneider*, 350 Fed. Appx. 595, 596 (2d Cir. 2009).  "The Supreme Court has made clear that officers who have used excessive force may be entitled—under the qualified immunity doctrine—to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'"  *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, *17 (S.D.N.Y. Sept. 24, 2012) (quoting *Saucier*, 533 U.S. at 206).

Multiple circuit courts have dealt with the relationship between leg sweeps, excessive force, and qualified immunity.  In *Shafer v. County of Santa Barbara*, No. 15-56548, 2017 WL 3707904 (9th Cir. Aug. 29, 2017), the plaintiff sued a police officer for excessive force and false arrest.  A jury found that the officer had probable cause to arrest the plaintiff for "resisting, delaying or obstructing" an officer, but the jury also found that the officer used excessive force in taking down the plaintiff with a leg sweep maneuver.  *See id.* at *2.  The Ninth Circuit held that there was sufficient evidence to support the jury's excessive force verdict but that the officer was nonetheless entitled to qualified immunity because using a leg sweep against a resisting arrestee does not violate clearly established law:

> [T]he question at hand is whether an officer violates clearly established law when he progressively increases his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment.  The answer is no.

14

*Id.* at 5.  There is, however, an important difference between *Schafer* and this case: when reviewing the facts in the light most favorable to Plaintiff, he was not resisting arrest.

Courts have overwhelmingly held that police officers are not entitled to qualified immunity when they use leg sweep maneuvers to take down arrestees who are not resisting.  *See McCaig v. Raber*, 515 Fed. Appx. 551, 555 (6th Cir. 2013) (rejecting a qualified immunity defense where the police officer used a leg sweep to take down an arrestee who "jerked away" when the police officer screamed in his ear but did not otherwise resist arrest); *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) ("[T]he contours of the right at issue were sufficiently clear to inform a reasonable officer in [the defendant's] position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee"); *accord Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 804 (E.D.N.C. 2015).

In *Frantz*, the plaintiff alleged that she was not resisting arrest but refused to cease speaking when the defendants told her to stop or she would be arrested.  *Frantz v. City of Oswego*, No. 5:15-CV-1192, 2017 WL 4737258, *2 (N.D.N.Y. Oct. 19, 2017).  The defendants claimed that she was walking away from them, shouting obscenities, and resisting arrest.  *Id*.  The defendants then tackled the plaintiff to the ground while holding her arms back to handcuff her. *Id*.  The court held that, making all inferences in the plaintiff's favor, at the time that she was arrested for a noise ordinance violation, she was not a threat to anyone, was not resisting arrest, and was not attempting to flee.  *See id*. at *6.

15

Making all inferences in Plaintiff's favor, at the time that he was arrested for obstructing traffic, he consented to—and was already—handcuffed, and was not attempting to flee. Plaintiff further alleges that he was kicked in the knee with greater force than a leg sweep. Dkt. No. 5 at ¶¶ 19-20. Therefore, Defendant Silverman is not entitled to qualified immunity.

### 3. Personal Involvement of Defendant Slator

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 284-85 (1980)). As such, for a plaintiff to recover in a Section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id*. (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, (1979)) (other citation omitted).

"A police officer is personally involved in the use of excessive force if he 'directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so.'" *Mcrae v. City of Hudson*, No. 1:14-cv-236,

16

2015 WL 275867, *6 (N.D.N.Y. Jan. 21, 2015) (quoting *Espada v. Schneider*, 522 F. Supp. 2d 544, 555 (S.D.N.Y. 2007)).

> Under the latter theory, plaintiff must prove the use of excessive force by an individual and show that the defendant who allegedly failed to intervene: "1) possessed actual knowledge of the use ... of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force."

*Id.* (quoting *Lewis v. Mollette*, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010)).

Plaintiff's complaint does not assert that Defendant Slator kicked Plaintiff or had any physical interaction with Plaintiff other than formally arresting him. *See generally* Dkt. No. 5 at ¶¶ 10-24. While a defendant's presence may be sufficient to establish personal involvement where the plaintiff is unaware of who actually engaged in the use of excessive force, that is not the case here. *See Lapoint v. Vasiloff*, No. 5:15-CV-185, 2017 WL 976947, *5 (N.D.N.Y. Mar. 13, 2017) (citing *De Michele v. City of New York*, No. 09 Civ. 9334, 2012 WL 4354763, *16-17 (S.D.N.Y. Sept. 24, 2012); *Snoussi v. Bivona*, No. 05-cv-3133, 2010 WL 3924255, *3 (E.D.N.Y. Feb. 17, 2010)); *see also Mabb v. Town of Saugerties*, No. 1:18-CV-866, 2020 WL 210313, *3 (N.D.N.Y. Jan. 14, 2020). Rather, Plaintiff is aware of who kicked him and affirmatively asserts that it was Defendant Silverman. Dkt. No. 5 at ¶¶ 19-20. Thus, Defendant Slator's presence alone does not establish his personal involvement as he did not engage in the alleged use of force. *See Espada*, 522 F. Supp. 2d at 555-56.

Additionally, Plaintiff's complaint fails to sufficiently allege that Defendant Slator failed to intervene during the excessive use of force as he failed to put forth any facts establishing that Defendant Slator had a realistic opportunity to intervene and prevent Defendant Silverman from kicking Plaintiff.  In *O'Neill*, the Second Circuit found that three blows in rapid succession did not leave the defendant a "realistic opportunity to attempt to prevent them." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).  Accordingly, the Second Circuit found that there "was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *Id*. at 11-12.

Plaintiff alleges only that Defendant Silverman kicked him once and that he was then taken to the hospital in an ambulance.  *See* Dkt. No. 5 at ¶¶ 15-20, 24, 26.  Like *O'Neill*, Plaintiff has not alleged an episode of sufficient duration for Defendant Slator to have intervened.  Without more, the Court cannot find that Plaintiff has pled a plausible claim of excessive force against Defendant Slator.  *See Espada*, 522 F. Supp. 2d at 556 ("[I]t is clear that Miranda would not have had a reasonable opportunity to intercede during such a brief and spontaneous assault, and thus could not be liable for excessive force").  Therefore, the City Defendants' motion to dismiss Plaintiff's excessive force/failure to intervene claim against Defendant Slator is granted.

### 4. Failure to Intervene Claims against Defendant Clark

Plaintiff asserts that Defendant Clark failed to intervene during the use of excessive force against him.  Dkt. No. 5 at ¶ 69.  The City Defendants have moved to dismiss this claim as Plaintiff's complaint has failed to allege that Defendant Clark was present during Plaintiff's arrest,

let alone during the alleged use of excessive force.  Dkt. No. 18 at 17.  Plaintiff does not oppose this assertion but has requested that if the Court determines that Plaintiff has failed to adequately plead that Defendant Clark failed to intervene, that it dismiss Plaintiff's claim without prejudice so that Plaintiff may later assert these claims if he learns of facts through discovery establishing Defendant Clark's presence during the use of excessive force.  Dkt. No. 31 at 14.

Indeed, Plaintiff's complaint fails to assert any facts regarding Defendant Clark during the use of excessive force.  *See* Dkt. No. 5 at ¶¶ 10-22.  As Plaintiff has failed to allege that Defendant Clark was present at the scene during the use of excessive force, or at any point prior to his transportation to Oneida Healthcare, Plaintiff has failed to plead a claim for failure to intervene against Defendant Clark.  *See McRae*, 2015 WL 275867, at *7 (dismissing the plaintiff's claim where there was no allegation that the defendant was present for the assault or had knowledge that the plaintiff was at risk of harm).

"Although Plaintiff has failed to state a cause of action with respect to the claims outlined above, because the Court cannot definitively conclude that Plaintiff is unable to state a cause of action with respect to at least some of those claims, the dismissal is without prejudice." *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479-80 (W.D.N.Y. 2017).  Thus, Plaintiff's claim for failure to intervene during the use of force against Defendant Clark is dismissed without prejudice and the City Defendants' motion to dismiss this claim is granted.

## C.    Deliberate Indifference

Defendants assert that Plaintiff's dislocated knee is not a serious medical need and because Plaintiff concedes that he was immediately brought to Oneida Healthcare, there can be no finding of deliberate indifference.  Dkt. No. 18 at 9-12; Dkt. No. 30-6 at 14-16.  The County Defendants also assert that Plaintiff has failed to allege personal involvement of Defendant Silverman.  Dkt. No. 30-6 at 13.  The City Defendants' motion to dismiss is denied and the County Defendants' motion for judgment on the pleadings is granted.

### 1. Deliberate Indifference Claim

"The Due Process Clause ... does require the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).  "In fact, the due process rights of a person in [the arrestee's] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 535, n. 16 (1979)).  An arrestee's constitutional guarantees are satisfied where he is "taken promptly to a hospital that provided the treatment necessary for his injury." *Id*. at 245.  A plaintiff's claims for deliberate indifference to a serious medical need are governed by the same standard as a pretrial detainee when their claim arises from their arrest.  *See Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 394-95 (S.D.N.Y. 2020).

As Plaintiff was a pretrial detainee at the time of the incidents addressed in the complaint, Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Yancey v.*

20

*Robertson*, 828 Fed. Appx 801, 803 (2d Cir. 2020) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).  "This, in turn, requires a two-step inquiry. …  First, the plaintiff must satisfy the 'objective prong' by showing a sufficiently serious need. ...  Second, the plaintiff must meet the 'subjective prong' which requires the officer to have acted with 'deliberate indifference' to the challenged condition."  *Id*. (citing *Darnell*, 849 F.3d at 29) (international citations omitted). However, a claim for "'deliberate indifference' does not require proof of 'a malicious or callous state of mind' and is instead akin to recklessness, requiring a plaintiff to show that the official knew or should have known of the excessive risk to the plaintiff's health."  *Id*. at 803, n.2.

### a. The Objective Prong

The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)).  To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract."  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003); *see*

21

*also Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

Courts outside of the Second Circuit have found that dislocated joints are serious medical conditions. *Petrichko v. Kurtz*, 117 F. Supp. 2d 467, 470 (E.D. Pa. 2000) ("Is a dislocated shoulder a serious medical need?  I conclude that it is.  A dislocated shoulder undisputably causes great pain, and the evidence—including records showing that plaintiff's work activities were restricted because of the dislocated shoulder—indicates that a dislocated shoulder can lead to permanent disability"); *Sanders v. Wexford Health Sources, Inc.*, No. 1:07-cv-1100, 2009 WL 3152864, *9 (C.D. Ill. Sept. 25, 2009) ("[P]laintiff's chronically dislocating right shoulder does constitute a serious medical need"); *Von Haney v. Cross*, No. 2:18-CV-1836, 2019 WL 586620, *3 (E.D. Cal. Feb. 13, 2019) (accepting the plaintiff's dislocated knee cap as a serious medical condition when examining the plaintiff's motion to proceed *in forma pauperis*); *Plaster v. Kneal*, No. 3:06CV1655, 2009 WL 2475037, *15 (M.D. Pa. Aug. 11, 2009) (finding that the plaintiff's knee injury was a serious medical condition).

It is clear that where a dislocated joint causes "extreme pain," the injury constitutes a serious medical need. *Johnson*, 412 F.3d at 403.  Even minor tooth cavities have been found to be serious medical conditions where the plaintiff experienced further tooth decay and chronic pain.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citing *Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995); *Hunt v.*

*Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989*)*; *Dean v. Coughlin*, 623 F. Supp. 392, 404
(S.D.N.Y. 1985)).

Plaintiff alleges that when Defendant Silverman kicked him, Defendant Silverman
dislocated his knee and caused it to swell and become very painful.  Dkt. No. 5 at ¶¶ 19-20.
Plaintiff claims that he was in so much pain he could not stand, get himself to a toilet, and twice
defecated on himself.  *Id*. at ¶¶ 29-30.  In *Hathaway*, the Second Circuit held that a prisoner's hip
pain due to broken pins and arthritis was a sufficiently serious medical condition as the plaintiff
"continued to experience great pain over an extended period of time and had difficulty walking."
*Hathaway v. Coughlin*, 37 F.3d 63, 65, 67 (2d Cir. 1994).  Plaintiff's allegations in the complaint
set forth a plausible claim that his dislocated knee was a serious medical condition.

Plaintiff acknowledges that Defendants Slator, Clark, and Silverman brought Plaintiff to
Oneida Healthcare for treatment for his knee.  Dkt. No. 5 at ¶¶ 24, 26.  Plaintiff was, however,
discharged with instructions to seek care at Upstate Emergency Department because Oneida
Healthcare did not provide orthopedic services.  *Id*. at ¶ 27.  Rather than bring Plaintiff to the
Upstate Emergency Department, Defendants Slator and Clark placed him in a cell at the Oneida
City Police Station.  *Id*. at ¶ 28.  Defendants assert that they fulfilled their obligations to get
Plaintiff care by bringing him to Upstate Emergency Department and make no comment as to
why they failed to bring Plaintiff to Oneida Healthcare.  Dkt. No. 18-1 at 12.

The Supreme Court has held that an arrestee's constitutional guarantees pursuant to the
Due Process Clause are generally satisfied where he is "taken promptly to a hospital that provided

the treatment necessary for his injury." *City of Revere*, 463 U.S. at 244-45.  However, Plaintiff

claims that while he was brought to the hospital, he did not receive treatment.  Dkt. No. 5 at ¶ 27.

Rather, the hospital was unable to treat him and told him to go to another hospital that could.  *Id*.

Plaintiff asserts that his condition only worsened after being discharged and he received no

further treatment.  *Id*. at ¶¶ 29-30.  A plaintiff's claims that prison officials failed to follow

discharge instructions of a physician to schedule further medical care for the plaintiff are

sufficient to establish a claim for deliberate indifference.  *Lugo v. Senkowski*, 114 F. Supp. 2d

111, 116 (N.D.N.Y. 2000).

     As Plaintiff has alleged that he suffered a dislocated joint causing such extreme pain that it

affected his activities of daily life and required multiple surgeries, and that the deprivation of care

rendered him immobile, he has plausibly alleged a sufficiently serious medical need.

### b. The Mental Element

     "After *Darnell*, 'deliberate indifference' is now 'defined objectively,' and the 'Due Process

Clause can be violated when an official does not have subjective awareness that the official's acts

(or omissions) have subjected the pretrial detainee to a substantial risk of serious harm.'"  *Lloyd v.

City of New York*, 246 F. Supp. 3d 704, 719 (S.D.N.Y. 2017) (quoting *Darnell*, 849 F.3d at 35).

A pretrial detainee suing for deliberate indifference under the Fourteenth Amendment "is required

to show only that the prison official acted with objective recklessness, or that the defendant 'knew

or should have known' that 'an excessive risk to health or safety' would result."  *Grimmett v.*

*Corizon Med. Assocs. of New York*, No. 15-CV-7351, 2017 WL 2274485, \*4 (S.D.N.Y. May 24, 2017) (quoting *Darnell*, 849 F.3d at 35).

"Prison officials are deliberately indifferent to an inmate's health, and thus have a sufficiently culpable state of mind, when they 'act or fail to act while actually aware of a substantial risk that serious inmate harm will result.'" *McFadden v. Noeth*, 827 Fed. Appx. 20, 27 (2d Cir. 2020) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).

Prolonged pain may constitute serious harm. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003). "'[T]he Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'" *Id*. (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977)). Thus, claims that prison officials denied a plaintiff treatment for pain which caused "continuous, significant pain unnecessarily, and led to a needlessly prolonged period of delay in Plaintiff's receipt of medical treatment" are sufficient to satisfy the subjective prong of deliberate indifference. *Robinson v. Knibbs*, No. 16-CV-3826, 2017 WL 3578700, \*6 (S.D.N.Y. Aug. 17, 2017). Therefore, under the *Darnell* standard, officers act with the requisite mental element for deliberate indifference where they deny the plaintiff medical treatment and knew or should have known that it would unnecessarily prolong the plaintiff's pain. *See id*.

Plaintiff claims that Defendants Slator, Clark, and Silverman took him to Oneida Healthcare, and upon discharge, he was instructed to go to the Upstate Emergency Department but was instead taken to the Oneida City Police Station. Dkt. No. 5 at ¶¶ 27-28. Plaintiff claims

that Defendants were in possession of his discharge instructions. *Id*. at ¶ 27. Further, Defendant

Clark was aware that Plaintiff's pain rendered him immobile and that he twice defecated himself.

*Id*. at ¶¶ 29-31.

Plaintiff's claims are sufficient to establish that Defendants Slator and Clark denied

Plaintiff medical treatment and knew or should have known that it would unnecessarily prolong

his pain. Plaintiff has therefore pled a plausible claim for deliberate indifference. The City

Defendants' motion to dismiss this claim is denied.

### 2. Personal Involvement of Defendant Silverman

The County Defendants assert that Plaintiff's claims against Defendant Silverman must be

dismissed because Plaintiff failed to allege that Defendant Silverman had any further involvement

in Plaintiff's arrest after he was brought to Oneida Healthcare. Dkt. No. 30-6 at 13-14. Further,

the Oneida City Police Department had complete decision-making authority regarding Plaintiff's

medical care as he was arrested, taken into custody, held, and charged by the Oneida City Police,

not the Madison County Sheriff's Department. *Id*. at 14. Therefore, Plaintiff failed to allege that

Deputy Silverman directly participated in the constitutional violation. *Id*.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991). Thus, a plaintiff must plead "direct participation, or failure to remedy the alleged

wrong after learning of it, or creation of a policy or custom under which unconstitutional practices

occurred, or gross negligence in managing subordinates" by the Defendant. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit clarified that there is no special test for liability of supervisors but that "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. at 616 (quoting *Iqbal*, 556 U.S. at 676).

Plaintiff asserts that he was arrested by Defendant Slator, and then that Defendants Silverman, Clark, and Slator transported him to Oneida Healthcare via ambulance for his knee injury. Dkt. No. 5 at ¶¶ 14, 24, 26. Plaintiff claims that he was taken to Oneida City Police Station upon discharge. *Id*. at ¶ 28. Plaintiff does not allege who transported him to the Oneida City Police Station rather than to the Upstate Emergency Department. *See id*. at ¶¶ 23-35. Plaintiff asserts that claiming that Defendant Silverman was present when he was taken to Oneida Healthcare is sufficient to show deliberate indifference. Dkt. No. 32 at 7. Plaintiff is incorrect.

Plaintiff argues that Defendants acted deliberately indifferent to Plaintiff's serious medical need when they failed to bring him to the Upstate Emergency Department as they were instructed by Oneida Healthcare. Dkt. No. 5 at ¶¶ 27-34. Plaintiff does not assert any facts demonstrating that Defendant Silverman was present when Plaintiff was discharged from Oneida Healthcare or that he was directly involved in the failure to transfer Plaintiff. Following Plaintiff's discharge, the complaint establishes that Plaintiff was within the custody of the City Defendants as he was arrested by Defendant Slator and placed in a cell at the Oneida Police Station. *Id*. at ¶ 28.

Further, the charges that Plaintiff complains of were brought by Defendant Clark of the Oneida Police Department.  Dkt. No. 5-1 at 2.

The only point at which Plaintiff asserts that Defendant Silverman was present was when Plaintiff was immediately provided medical attention.  Dkt. No. 5 at ¶ 26.  Plaintiff has thus failed to establish Defendant's Silverman's personal involvement by failing to claim that he was a direct participant in the allege constitutional violation.  The County Defendants' motion for judgment on the pleadings is therefore granted.

### 3. Failure to Intervene

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill*, 839 F.2d at 11 (citations omitted).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, ... (2) that a citizen has been unjustifiably arrested, ... or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id*. (citing *O'Neill*, 839 F.2d at 11-12).  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id*. (citing *O'Neill*, 839 F.2d at 11-12).

Plaintiff has failed to allege any facts demonstrating that Defendant Silverman knew or should have known that Plaintiff's constitutional rights were being violated when he was not taken to the Upstate Emergency Department.  Plaintiff has failed to allege that Defendant Silverman was present when he was discharged or transported from Oneida Healthcare to the Oneida Police Station.  Additionally, Plaintiff does not allege that Defendant Silverman was capable of transporting him to the Upstate Emergency Department when the City Defendants transported him to the Oneida Police Department.  Plaintiff has thus failed to allege that Defendant Silverman observed the constitutional violation or that he had an opportunity to intervene.  Plaintiff's claim against Defendant Silverman for failing to intervene is dismissed and the County Defendants' motion for judgment on the pleadings is granted.

However, Plaintiff's complaint alleges sufficient facts to support that Defendants Slator and Clark failed to intervene during the alleged constitutional violation.  Plaintiff claims that Defendants Slator, Clark, and Silverman transported him via ambulance to Oneida Healthcare. Dkt. No. 5 at ¶ 26.  Plaintiff alleges that he was instructed to go to the Upstate Emergency Department and was discharged.  *Id*. at ¶ 27.  Rather than being brought to the Upstate Emergency Department, he was taken to the Oneida Police Station.  *Id*. at ¶ 28.  While at the Oneida Police Station, Plaintiff claims that Defendant Clark questioned him as he defecated on himself and that Plaintiff told Defendant Clark that he could not move.  *Id*. at ¶ 31.

While Plaintiff's complaint does not allege how he was transported to the Oneida Police Station, the complaint alleges sufficient facts for the Court to infer that either Defendants Slator

29

or Clark transported him to the Oneida Police Station.  Finally, unlike Plaintiff's claims for

excessive force, Plaintiff does not allege that either Defendant in particular acted with deliberate

indifference by transporting Plaintiff to the Oneida Police Station rather than the Upstate

Emergency Department.  As such, Plaintiff is permitted to plead in the alternative that Defendants

Clark and Slator failed to intervene in the alleged constitutional violation.  *Matthews v. City of

New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because plaintiffs properly allege at least

one constitutional violation, plaintiffs are entitled to discovery to determine which officers

participated directly in the alleged constitutional violations and which officers were present and

failed to intervene").

### D.      Title II of the ADA

The City Defendants assert that Plaintiff's ADA claims must be dismissed because

Plaintiff has failed to allege a qualifying disability.  Dkt. No. 18-1 at 12-15.  Plaintiff argues that

under the amended ADA, he has sufficiently pled a qualifying disability.  Dkt. No. 31 at 9-13.

The County Defendants assert that Plaintiff's ADA claims must be dismissed because individuals

are not liable under the ADA and the ADA does not cover arrests.  Dkt. No. 30-6 at 16-19.

Title II of the ADA provides in relevant part that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any

such entity."  42 U.S.C. § 12132.  A "disability" is defined as a "physical or mental impairment

that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  In general,

plaintiffs who seek to state a claim for disability discrimination under the ADA must establish

"that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the

ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from

defendants' services, programs, or activities, or were otherwise discriminated against by

defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272-

73 (2d Cir. 2003).

"The purpose of [Title II of the ADA] is to 'eliminate discrimination on the basis of

disability and to ensure evenhanded treatment between the disabled and able-bodied.'"

*Maccharulo v. New York State Dept. of Corr. Servs.*, No. 08 Civ. 301, 2010 WL 2899751, *2

(S.D.N.Y. July 21, 2010) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)).  Under Title

II of the ADA, a defendant discriminates when it fails to make a reasonable accommodation that

would permit a qualified disabled individual "to have access to and take a meaningful part in

public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004), *opinion

corrected on other grounds* at 511 F.3d 238 (2d Cir. 2004); *Disabled In Action v. Board of

Elections of New York*, 752 F.3d 189, 197 (2d Cir. 2014) ("A public entity discriminates against a

qualified individual with a disability when it fails to provide 'meaningful access' to its benefits,

programs, or service'") (citation omitted).

The Supreme Court has held that state prisons "fall squarely within the statutory definition

of 'public entity'" in Title II of the ADA, and state inmates may bring ADA claims.  *Pennsylvania*

*Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Hilton v. Wright*, 673 F.3d 120, 128 (2d Cir. 2012) (DOCCS treated as a public entity under Title II of the ADA).

"A number of courts have considered whether interactions between law enforcement and disabled individuals—whether initiated by the disabled individual or the police and whether the interaction culminates in an arrest—are 'services, programs, or activities' subject to the requirement of accommodation under Title II of the ADA." *Williams v. City of New York*, 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015) (citations omitted). "Those courts have generally found that Title II applies, but the reasonableness of the accommodation required must be assessed in light of the totality of the circumstances of the particular case." *Id.*

There are two main scenarios in which an arrest made by an officer of a covered agency can violate Title II of the ADA. *See id.* at 369. First, failure to take account of a person's disability can result in "wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity." *Id.* (citations omitted). Second, even where an arrest is appropriate, officers may fail to provide "reasonable accommodation, where ... they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.*

### *1. Qualifying Disability*

Plaintiff asserts that the ADA has been amended to allow for a broader definition of disability and under this new, more lenient standard, Plaintiff has adequately pled a qualifying disability regarding his bipolar disorder and dislocated knee.  Dkt. No. 31 at 9-13.

Foremost, 42 U.S.C. § 12102, which defines disability within the meaning of the ADA, was last amended in 2008—almost 13 years ago.  *See also Montague v. Nat'l Grid USA*, No. 17-CV-3, 2020 WL 6833418, *8 (W.D.N.Y. Nov. 20, 2020).  While Defendants do present some caselaw under the previous standard, the large portion of their briefs cite to caselaw following 2009.

"Under the 2008 ADA Amendment Act, Pub. L. 110-325, 122 Stat. 3553 (2008), the intent of Congress was to make it easier for claimants to obtain protection under the ADA, 29 C.F.R. § 1630.1(c)(4)."  *Montague*, 2020 WL 6833418, at *8.  However, "[n]ot every impairment is a 'disability' within the meaning of the ADA."  *Williams v. N.Y.C. Dep't of Educ.*, No. 18-CV-11621, 2020 WL 906386, *4 (S.D.N.Y. Feb. 25, 2020) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  "[A] qualifying disability 'must limit a major life activity and the limitation must be substantial.'"  *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502, 2020 WL 1244474, *12 (S.D.N.Y. Mar. 16, 2020).

"To successfully plead a qualifying disability under the ADA, a plaintiff 'must allege which major life activity or activities their impairment substantially affects.'"  *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, *9 (S.D.N.Y. May 31, 2020) (quoting *Laface v. E. Suffolk BOCES*, No. 2:18-cv-1314, 2020 WL 2489774, *10 (E.D.N.Y. May

18, 2020)).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "The term '[s]ubstantially limits' is not meant to be a demanding standard,' but it is 'well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations."  *Collins v. Giving Back Fund*, No. 18 Civ. 8812, 2019 WL 3564578, *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc*., No. 97 Civ. 4018, 2001 WL 55726, *4 (S.D.N.Y. Jan. 22, 2001)).

### a. Plaintiff's bipolar disorder

"'Bipolar Affective Disorder has been recognized as a disability under the ADA.'" *Mercado v. Dep't of Corr*., No. 3:16-CV-1622, 2018 WL 2390139, *10 (D. Conn. May 25, 2018) (quoting *Glowacki v. Buffalo Gen. Hosp*., 2 F. Supp. 2d 346, 351 (W.D.N.Y. 1998)).  However, "[t]he ADA requires an 'individualized assessment' which prevents the Court from determining that Plaintiff is disabled solely on the basis of his diagnosis." *Id*. (citing 28 C.F.R. § 35.108(d)(1)(vi)).  Additionally, "'whether an impairment substantially limits a major life activity [must] be made without regard to the ameliorative effects of mitigating measures' such as medication, psychotherapy, or behavioral therapy." *Id*. (quoting 28 C.F.R. §§ 35.108(d)(1)(viii), 35.108(d)(4)) (alterations in original).

A plaintiff sufficiently pleads an ADA-protected disability where he has "plausibly alleged that the symptoms of his bipolar disorder, when active, substantially limit multiple major life

activities.  Moreover, even if [the plaintiff's] impairment w[as] merely temporary, it would not be '*per se* unprotected under the ADA.'"  *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, *8 (E.D.N.Y. June 19, 2020) (quoting *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 317 (2d Cir. 1999)).

Plaintiff's complaint alleges that he was diagnosed with and has received social security disability for bipolar depression and attention deficit disorder since 2014.  Dkt. No. 5 at ¶ 37. Additionally, he is prescribed a "multitude of prescription medications" and without such medications he became an emotionally disturbed person on March 15, 2020, leading to his arrest. *Id*. at ¶¶ 38-39.  Specifically, Plaintiff claims that without his medication, he suffered a psychotic episode and began running in the street and obstructing traffic.  *Id*. at ¶ 10.  Finally, Plaintiff claims that his bipolar disorder has "substantial[ly] impaired major life activities."  *Id*. at ¶ 40.

By alleging that he becomes significantly mentally disturbed when his bipolar disorder is left untreated, Plaintiff has sufficiently pled a qualifying disability under the ADA.  *See Mercado*, 2018 WL 2390139, at *10 (holding that the plaintiff's bipolar disorder substantially affected major life activities where he "'demonstrated behavioral regressions, including threatening and intimidating staff'" when off of his medication); *Robles*, 2020 WL 3403191, at *7 (holding that the plaintiff alleged sufficient facts to make a plausible claim that he had a qualifying disability where he suffered significant mental disturbances requiring hospitalization when not using his medication).

### b. Plaintiff's dislocated knee

Defendants assert that Plaintiff's dislocated knee is not a qualifying disability as it was merely temporary.  Dkt. No. 18 at 14-15.  "Indeed, injuries of longer duration are routinely found to be transitory for purposes of assessing ADA claims."  *Pitter v. Target Corp.*, No. 1:20-CV-183, 2020 WL 8474858, *11 (N.D.N.Y. Sept. 1, 2020) (citing *Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272, 275 (W.D.N.Y. 2009)).  However, "even if [the plaintiff's] impairment[s] were merely temporary, it would not be '*per se* unprotected under the ADA.'"  *Robles*, 2020 WL 3403191, at *8 (quoting *Adams*, 187 F.3d at 317).

Courts have found that broken bones which resolved within relatively short periods of time are not ADA-qualifying disabilities.  *Guary*, 618 F. Supp. 2d at 275 ("[P]laintiff's broken ankle, which resulted in a single, twelve-week disability leave with no alleged physical limitations thereafter, is not a disability for purposes of the ADA or the parallel New York statute").  However, even a broken bone may be sufficient to establish an ADA-qualified disability where a plaintiff alleges that it "impeded his ability to perform major life functions."  *Poulos v. City of New York*, No. 14CV3023, 2015 WL 5707496, *9 (S.D.N.Y. Sept. 29, 2015) (finding plaintiff's broken jaw to be an ADA-qualified disability).

Unlike *Guary*, there are no allegations in the complaint that Plaintiff's dislocated knee resolved quickly and without further complications.  Additionally, Defendants present no evidence to support this assertion and merely assert—without any case law directly on point—that a dislocated knee *per se* cannot be an ADA-qualifying disability.  Further, Plaintiff presents evidence that his dislocated knee inhibited his activities of daily life such that he could not walk,

and, and twice defecated on himself.  Dkt. No. 5 at ¶¶ 29-30.  Plaintiff also asserts that he required multiple surgeries to resolve his injury.  *Id*. at ¶ 22.  However, the Court need not decide this issue now as plaintiff has failed to plead any accommodation that should have been provided him and that it would have been reasonable.  *See Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) (holding that a court need not examine whether an individual had a qualifying disability where they have not established that a reasonable accommodation existed and thus a *prima facie* case).

More fundamentally, however, Plaintiff's ADA claims relating to his knee injury must be dismissed because he "has not adequately pleaded that he was denied the opportunity for medical treatment by reasons of his" injured knee.  *See Schnauder v. Gibens*, 679 Fed. Appx. 8, 11 (2d Cir. 2017) (citing *Wright*, 831 F.3d at 72).  Any argument that the denial of timely and meaningful medical treatment for his knee constituted a failure to provide a reasonable accommodation fails because his injured knee "was not the reason he was unable to access medical services; rather, it was the reason he sought such services."  *Id.*; *see also Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) ("At its core, the issue here is not whether Tardif was denied medical services *because* she has a disability.  Instead, her claim relates solely to whether she received adequate medical treatment in police custody *for* her disability, and such a claim is not cognizable under the ADA.  To hold otherwise would allow inmates to litigate in federal court virtually every medical malpractice claim arising in a custodial setting under the auspices of the

ADA") (emphasis in original);[6] *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. ... The ADA does not create a remedy for medical malpractice").

Accordingly, the Court grants Defendants' motions insofar as they seek dismissal of Plaintiff's ADA claims relating to his knee injury.

### 2. Services, Benefits, or Programs

In their motion, the County Defendants first contend that arrests are not covered by the ADA because an arrest is not a "program, service or activity" from which a disabled person could be excluded or otherwise denied a benefit. *See* Dkt. No. 30-6 at 15-19. The County Defendants acknowledge that some district courts and out-of-circuit caselaw have concluded that interactions between law enforcement and disabled individuals are subject to the protections of the ADA but argue that these cases are distinguishable from the present matter. *See id.* In response, Plaintiff contends that the cases upon which the County Defendants rely are outdated and cites to cases that have found that Title II of the ADA applies to arrests. *See* Dkt. No. 32 at 9-13.

As discussed above, to allege a violation of Title II of the ADA, a plaintiff must allege (1) that he was a "qualified individual" with a disability; (2) that the defendant is subject to the ADA; and (3) that the plaintiff was denied the opportunity to participate in or benefit from the

---

[6] In *Tardif*, the Second Circuit noted that its holding "does not leave pretrial detainees, such as Tardif, without a remedy; rather, such a claim for denial of medical treatment can be pursued under 42 U.S.C. § 1983, as a due process claim under a deliberate indifference standard (as Tardif alternatively asserted in her complaint)." *Tardif*, 991 F.3d at 405, n.9. As in *Tardif*, Plaintiff has alleged a deliberate indifference claim regarding the denial of medical treatment for his knee injury.

defendant's services, programs, or activities, or was otherwise discriminated against by the defendant by reason of his disability.  *See Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196-97 (2d Cir. 2014) (citing *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)).

 Although the Second Circuit has not addressed whether interactions between law enforcement and disabled individuals are subject to the protections of the ADA, several district courts have addressed the issue.  In *Williams v. City of New York*, 121 F. Supp. 3d 354, 364-365 (S.D.N.Y. 2015), that district court held that the ADA does govern "on-the-street encounters" between police and covered individuals, concluding that "the City's crabbed interpretation of Title II's coverage of police activity simply does not comport with the language of Title II and its implementing regulations, particularly in light of the remedial purpose of the statute and the weight of authority that has considered the issue."  The *Williams* court reasoned that

> "Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights" and "a pattern of unequal treatment" in a wide range of public services and activities "in the administration of justice." *Lane*, 541 U.S. at 524-25, 124 S. Ct. 1978.  The Department of Justice's implementing regulations for the ADA make clear that, with exceptions not relevant here, Title II of the ADA "applies to all services, programs, and activities provided or made available by public entities," 28 C.F.R. § 35.102(a), and requires public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless the required modification would fundamentally alter the nature of the service, program, or activity, 28 C.F.R. § 35.130(b)(7).  The phrase "services, programs, or activities" is "a catch-all phrase" that prohibits all discrimination by a public entity.

> *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) (quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997), *recognized as superseded on other grounds*, *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001)).  As the Second Circuit has explained, the ADA should be "broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* at 68 (quotation marks and citation omitted).
>
> A number of courts have considered whether interactions between law enforcement and disabled individuals—whether initiated by the disabled individual or the police and whether the interaction culminates in an arrest—are "services, programs, or activities" subject to the requirement of accommodation under Title II of the ADA.  Those courts have generally found that Title II applies, but the reasonableness of the accommodation required must be assessed in light of the totality of the circumstances of the particular case.

*Williams*, 121 F. Supp. 3d at 365-66 (citing *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), reversed in part on other grounds, 575 U.S. 600 (2015); *Waller ex rel. Estate of Hunt v. Danville, Va.*, 556 F.3d 171, 175 (4th Cir. 2009); *Bircoll v. Miami–Dade Cnty.*, 480 F.3d 1072, 1085–86 (11th Cir. 2007); *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000); *Gohier v. Enright*, 186 F.3d 1216 (10th Cir. 1999).

The *Williams* court went on to conclude that there are "at least two types of Title II claims applicable to arrests," including "(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or

indignity in that process than other arrestees." *Id.* at 369 (quoting *Sheehan*, 743 F.3d at 1232). The court found that "[t]he only reasonable interpretation of Title II is that law enforcement officers who are acting in an investigative or custodial capacity are performing 'services, programs, or activities' within the scope of Title II." *Id.* at 368. Other courts in this Circuit have similarly concluded that Title II applies to arrests and investigative activities. *See Reyes v. Town of Thomaston*, No. 3:18-cv-831, 2020 WL 5849529, *3-4 & n.1 (D. Conn. Sept. 30, 2020); *Sage v. City of Winooski*, No. 2:16-cv-116, 2017 WL 1100882, *3-4 (D. Vt. Mar. 22, 2017). The Court agrees with these cases and finds that Title II of the ADA requires police officers to provide reasonable accommodations to arrestees and that any threatening or exigent circumstances should be considered when determining the reasonableness of the proposed accommodation.

Defendants further contend that the ADA claims must be dismissed because "Plaintiff was treated no differently than any other arrestee who is angry, resisting, spitting and yelling." Dkt. No. 30-6 at 18. Defendants argue that "Plaintiff's disability was simply irrelevant to the arrest. Plaintiff's behavior, which was caused by his own failure to take his medication, resulted in the arrest and having to get him under control. Plaintiff certainly never requested any accommodation, and it is far from clear and completely unfair now to try and determine in hindsight what accommodation would have been appropriate." *Id.* The Court disagrees.

In his complaint, Plaintiff alleges that he has a history of mental illness and that, on the day in question, he "was having a psychotic episode and as a result was yelling in the roadway of Lenox Avenue, Oneida, New York and was obstructing traffic." Dkt. No. 5 at ¶ 10. Further,

Plaintiff claims that he was clearly exhibiting signs of an emotionally disturbed person when Defendants Slator and Silverman arrived on the scene. *See id.* at ¶ 13. The complaint alleges that, instead of placing Plaintiff in handcuffs, informing him that he was under arrest, and subsequently kicking him in the knee, Defendants Silverman and Slator should have used de-escalation techniques. *See id.* at ¶¶ 18, 42, 72-73.

In *Sage v. City of Winooski*, No. 2:16-cv-116, 2017 WL 1100882 (D. Vt. Mar. 22, 2017), the defendant police officers responded to a report of a person trespassing at a local health club. *See id.* at *1. When the officers arrived, they were informed by the health club employees that the plaintiff had left the property at their request, but still asked the officers to serve the plaintiff with a notice of trespass. *See id.* When the officers located the plaintiff and asked to see his identification, the plaintiff responded that they should already know him as a resident of Allen House, which is a group home operated for persons with chronic and persistent serious mental illness. *See id.* When the plaintiff declined to provided identification, one of the officers asked the plaintiff if he preferred to be arrested and proceeded to open a handcuff case. *See id.* Seeing the handcuff case, the plaintiff struck the officer in the face. *See id.* When the other responding officer attempted to grab the plaintiff, he was able to break away from his grasp. *See id.* At this point, the officers deployed their tasers on the plaintiff. *See id.* While the plaintiff was "flailing" on the ground, one of the officers fired his service weapon, hitting the plaintiff in the leg. *See id.*

In his complaint, the plaintiff asserted five causes of action, including a claim for failure to provide reasonable accommodations in violation of the ADA. *See id.* at *2. The defendants

moved to dismiss the ADA claim, arguing that the statute does not apply to police interactions and that, even assuming it does apply, the claim should still be dismissed because the plaintiff presented a direct threat to the police officers. *See id.* at *3. Denying the motion to dismiss, the court first agreed with the majority position and found that the ADA applies to police interactions like the one at issue. *See id.* Second, the court found that the plaintiff's "violent behavior could arguably have been avoided if the officers had acknowledged and accommodated [the plaintiff's] mental illness." *Id.* at *4. The court also rejected the defendants' argument that the ADA claim must be dismissed because the plaintiff never made a demand for accommodations, noting that the Second Circuit has specifically held that reasonable accommodations are required if the disability is obvious. *See id.* (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)).

In *Sheehan*, a mentally-ill person was threatening police with a knife. *See Sheehan*, 743 F.3d at 1216. The court explained that while the plaintiff bore "the initial burden of producing evidence of the existence of a reasonable accommodation," she had met her burden at the motion to dismiss stage by asserting that "the officers should have respected her comfort zone, engaged in non-threatening communications and used the passage of time to defuse the situation rather than precipitating a deadly confrontation." *Id.* at 1233.

In the present matter, as in *Sage* and *Sheehan*, the Court finds that the allegations in Plaintiff's complaint are sufficient to support his ADA claim relating to his bipolar disorder against Defendants City of Oneida and Madison County.

43

### *3. Claims Against Defendants Slator, Clark, and Silverman*

In their motions, the City and County Defendants argue that the ADA claims must be dismissed insofar as they are brought against the individual Defendants because the ADA does not create individual liability.  Plaintiff, however, argues that the ADA claims against the individual Defendants are brought pursuant to 42 U.S.C. § 1983 to enforce his statutory rights under Title II of the ADA.  *See* Dkt. No. 31 at 13-14.

"It is well-settled that neither Title II of the ADA nor [Section] 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Hill v. LaClair*, No. 9:20-CV-441, 2020 WL 2404771, *7 (N.D.N.Y. May 11, 2020) (internal quotation marks and citation omitted).  This limitation on claims brought pursuant to Title II of the ADA poses a significant obstacle to Plaintiff, insofar as his claims are brought against Defendants Slator, Clark, and Silverman.  Yet Plaintiff tries to evade this black-letter law by tacking on citations to 42 U.S.C. § 1983 in her complaint.  Section 1983 "authorizes suits to enforce individual rights under federal statutes as well as the Constitution." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005).  But not every federal statutory right can be vindicated through Section 1983.  *See id.* at 120.  Instead, "there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997).  "The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Abrams*, 544 U.S. at 120; *see also Smith v. Robinson*, 468 U.S. 992, 1012 (1984), *superseded by statute on other grounds as stated in Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743,

750 (2017).  The Supreme Court has "explained that evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'"  *Abrams*, 544 U.S. at 120 (quoting *Blessing*, 520 U.S. at 341, 117 S. Ct. 1353); *see also Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 19-20 (1981).  "The crucial consideration is what Congress intended."  *Smith*, 468 U.S. at 1012.

The Second Circuit has not yet decided whether Section 1983 can be used as a backstop to create individual liability under the ADA.  But every court of appeals to consider this issue, as well as a majority of district courts in this Circuit, have rejected this approach and concluded Section 1983 is not available to provide a remedy for alleged violations of rights under the ADA. *See Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999); *see also Williams v. Pennsylvania Human Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017) ("[E]very circuit to consider this exact question has held that, while a plaintiff may use § 1983 as a vehicle for vindicating rights independently conferred by the Constitution, Title VII and ADA statutory rights cannot be vindicated through § 1983"); *Tri–Corp Housing Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016) (holding that "§ 1983 cannot be used to alter the categories of persons potentially liable in private actions under the Rehabilitation Act or the Americans with Disabilities Act"); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531

(11th Cir. 1997).  Although the Second Circuit has not yet addressed the issue of whether rights established in the ADA may be enforced under Section 1983, it has addressed the issue in the context of the Rehabilitation Act and, in doing so, it cited favorably to cases from its Sister Circuits which "all have concluded that § 1983 cannot be used to alter the categories of persons potentially liable in private actions under the Rehabilitation Act or the ADA."  *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 83 (2d Cir. 2020) (holding that "the rights established in the Rehabilitation Act may not be enforced through § 1983").

The Court finds this approach persuasive.  The ADA provides an extensive, comprehensive remedial framework that addresses every aspect of a plaintiff's claims under Section 1983.  As the Fifth Circuit explained in *Lollar*, "both the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks that address every aspect of [a plaintiff's claim] under section 1983.  To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenue of redress as well as section 1983 would be duplicative at best; in effect such a holding would provide the plaintiff with two bites at precisely the same apple."  *Lollar*, 196 F.3d at 610.

Finding this reasoning persuasive, the Court grants the pending motions insofar as they seek dismissal of Plaintiff's ADA claims brought against the individual Defendants.

E.     ***Monell* Claims**

Plaintiff asserts first that Defendants Madison County and City of Oneida had a duty to investigate allegations of excessive force and failed to do so.  *See* Dkt. No. 5 at ¶ 79.  Second,

Plaintiff claims that Defendants Clark, Silverman, and Slator were required to activate the cameras on their dashboards and body cameras when they activated the lights on their patrol cars, and despite their failure to do so, they were not punished. *Id*. at ¶¶ 80-81. Therefore, Plaintiff asserts that Defendants City of Oneida and Madison County were deliberately indifferent to the need to supervise, investigate and discipline Defendants Silverman, Clark, and Slator for violating Plaintiff's rights. *See id.* at ¶ 82. Defendants argue that Plaintiff has failed to plead a *prima facie Monell* claim. *See* Dkt. No. 18-2 at 18-20; Dkt. No. 30-6 at 19-21.

A municipality "may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a *respondeat superior* theory." *Id.* at *2. As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) 'the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection—an "affirmative link"—between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

"A plaintiff may plead a municipal policy or custom by alleging: (1) a formal policy, promulgated or adopted by the entity; or (2) that an official with policymaking authority took

action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).

"[A] failure to investigate incidents of force, and by extension, a failure to discipline officers for use of excessive force, can amount to an actionable policy under § 1983 when such failure evidences 'deliberate indifference' to the rights of persons with whom the police come into contact." *Moses v. Westchester Cty. Dep't of Correction*, No. 10 CIV. 9468, 2017 WL 4386362, *16 (S.D.N.Y. Sept. 29, 2017) (citing *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986)).

> To establish "deliberate indifference," a plaintiff must show that: [i] a policymaker knows "to a moral certainty" that city employees will confront a particular situation; [ii] the situation either presents the employee with "a difficult choice of the sort that training or supervision will make less difficult" or "there is a history of employees mishandling the situation;" and [iii] "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."

*Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007) (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Further, "[i]n order for Plaintiff to succeed on his failure to train and failure to discipline theories, there must be a pattern of similar misconduct." *Davis v. City of New York*, No. 12 CIV. 3297, 2018 WL 10070540, *6 (S.D.N.Y. Mar. 30, 2018) (citing *Connick v. Thompson*, 563 U.S.

51, 62 (2011)).  Multiple complaints of excessive force alone are insufficient to establish a pattern

of the use of excessive force by police officers.  *See id*. at *6-8.  The instances of use must be

sufficient to demonstrate that the officers' use of excessive force was so pervasive that it

established a "'custom or policy.'"  *Id*. at *7-8 (quoting *Dixon v. City of New York*, 14 Civ. 4930,

2017 U.S. Dist. LEXIS 119042, at *32-33 (S.D.N.Y. July 27, 2017)).  Without evidence of such a

policy or custom, a court is unable to infer that the municipality had any greater duty to supervise,

investigate, or discipline its officers.  *Moses*, 2017 WL 4386362, at *18.

Plaintiff's claim for *Monell* liability against Defendants Madison County and City of

Oneida for failing to discipline Defendants Silverman, Clark, and Slator for not activating their

body cameras must be dismissed as he fails to allege a constitutional violation.  In order to

establish municipal liability, the rights violated must be a constitutional right.  *Harper*, 424 Fed.

Appx. at 38.  While failing to activate worn body cameras may result in a due process violation

by failing to preserve evidence, this requires a showing of bad faith.  *United States v. Tillard*, No.

18-CR-6091, 2020 WL 57198, *5 (W.D.N.Y. Jan. 6, 2020) (citing *Arizona v. Youngblood*, 488

U.S. 51, 58 (1988)).  Thus, a "police officers' failure to activate body-worn cameras alone does

not constitute a due process violation."  *Id*. (citing *United States v. Taylor*, 312 F. Supp. 3d 170,

178 (D.D.C. 2018); *United States v. Brown*, No. 2:17-CR-58, 2017 WL 8941247, *15-16 (D.

Nev. Aug. 14, 2017)).

Plaintiff has failed to make any claim or assert any facts demonstrating that Defendants

Silverman, Slator, and Clark acted in bad faith when they failed to turn on their body cameras.

Without more, Plaintiff has failed to allege that Defendants Silverman, Slator, and Clark committed a constitutional violation by failing to turn on their body cameras and cannot impose liability on Defendants Madison County or the City of Oneida for failing to discipline them.

Plaintiff's deliberate indifference claims must also fail because Plaintiff has not alleged a policy or custom. Rather, Plaintiff has alleged only one isolated incident involving the use of excessive force. Such a claim cannot be considered to amount to deliberate indifference as courts have found that even repeated instances of excessive force do not necessarily establish a policy or custom. *See Davis*, 2018 WL 10070540, at *6; *Moses*, 2017 WL 4386362, at *18. In *Davis*, the court noted that even eighteen cases of excessive force complaints in a fifteen-month period did not establish a policy or custom. *Id*. at *7 (quoting *Dixon*, 2017 U.S. Dist. LEXIS 119042, at *32-33).

Plaintiff has thus failed to allege a policy or custom regarding the alleged use of force and cannot assert claims for deliberate indifference. As such, the Court grants Defendants' motions insofar as they seek dismissal of Plaintiff's *Monell* claims.

## F.    Assault

Plaintiff asserts claims for assault against all Defendants for the physical contact that occurred while he as being placed under arrest and the subsequent injuries that resulted. Dkt. No. 5 at ¶¶ 84-100. It is unclear what physical contact Plaintiff complains of, the arrest, the kick, or both. However, as Plaintiff does not make any assertions that his arrest was unlawful and notes that he consented to being handcuffed, the Court can only assume that Plaintiff is referring to the

kick.  Defendants assert that Plaintiff's claim requires dismissal as it is duplicative and fails to state a claim for assault.  Dkt. No. 18-2 at 21; Dkt. No. 30-6 at 22-23.

### 1. The City Defendant's Motion to Dismiss

"Federal excessive force claims and state law assault and battery claims against police officers are nearly identical."  *Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (citing *Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009)).  Thus, such claims "must be disposed of in the same manner."  *Pierre-Antoine v. City of New York*, No. 04 CIV. 6987, 2006 WL 1292076, *8 (S.D.N.Y. May 9, 2006) (finding that the same factual deficiencies resulting in summary judgment on the plaintiff's excessive force claims are grounds for granting summary judgment on the assault claims).  Therefore, Plaintiff's claims for assault against Defendants Slator and Clark must be dismissed as Plaintiff failed to sufficiently allege that they were personally involved in the assault.  *See id*.  The City Defendants' motion to dismiss Plaintiff's claims for assault is granted.

### 2. The County Defendants' Motion for Judgment on the Pleadings

The County Defendants assert that Plaintiff's assault claims against them in their individual capacities are untimely as this action was filed more than one year since the alleged assault.  Dkt. No. 30-6 at 21-22.  The County Defendants also assert that Defendant Madison County is not liable for the acts of Defendant Silverman as such a suit is prohibited against them by the New York State Constitution.  *Id*. at 22.

### a. Statute of Limitations

New York General Municipal Law § 50-i requires that any "action or special proceeding ... prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury ... alleged to have been sustained by reason of the negligence or wrongful act of" said entities "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based. ..."  New York Civil Practice Law and Rules § 215 also requires that "an action against a sheriff, coroner or constable, upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty, except the non-payment of money collected upon an execution," "shall be commenced within one year."

Whether the statute of limitations outlined in GML § 50-i or NY CPLR § 215 applies "depends upon who is the real party in interest."  *Coe v. Town of Conklin*, 94 A.D.3d 1197, 1198 (3d Dep't 2012).  Where an individual "was acting solely on his own behalf" NY CPLR § 215 applies.  *Id*.  Where an individual is alleged to have been "acting within the scope of his employment with the Town, however, the Town may be liable for his conduct and would thus be the real party in interest; in those circumstances, General Municipal Law § 50-i would apply."  *Id*. at 1198-99; *see also Ripka v. Cty. of Madison*, 162 A.D.3d 1371, 1373 (3d Dep't 2018).

Plaintiff filed this action on June 12, 2020 claiming that Defendant Silverman assaulted him during his arrest on March 15, 2019.  Dkt. No. 1; Dkt. No. 5 at ¶¶ 10, 97-100.  Plaintiff claims assault against Defendant Silverman in his official and unofficial capacities.  Dkt. No. 5 at ¶¶ 97-100.  However, claims against municipal "employees in their individual capacities are governed by the one-year statute of limitations in C.P.L.R. § 215(1)."  *Wierzbic v. Cty. of Erie*,

No. 13-CV-978S, 2018 WL 550521, *9 (W.D.N.Y. Jan. 25, 2018).  Thus, Plaintiff's claim for

assault against Defendant Silverman in his individual capacity must be dismissed.

However, Plaintiff's assault claim against Defendant Silverman in his official capacity and

against Defendant Madison County is subject to the one year and ninety-day statute of limitations

set forth in General Municipal Law § 50-i.  *See Wierzbic*, 2018 WL 550521, at *9.  As such, these

claims are timely.

### b. Defendant Madison County's Liability

Defendant Madison County asserts that "subdivision (a) of section 13 of Article XIII of the

New York State Constitution ... provides that 'the county shall never be made responsible for the acts

of the sheriff' which has been construed to defeat damages claims against counties for acts of its

Deputy Sheriffs."  Dkt. No. 30-6 at 22 (citing *Snow v Harder*, 43 A.D.2d 1003 (3d Dep't 1975)).

The language that the County Defendants cite to was removed from the New York

Constitution in 1989—over thirty years ago.  *See* N.Y. Const. art. XIII, § 13.  Further, the Court

cannot locate, and the County Defendants do not present, any case citing *Snow* following 1982.

Clearly, this authority is, at a minimum, outdated and even a cursory review would have revealed this.

Present authority demonstrates that a municipality may be liable for the acts of the sheriff

where she was acting within the scope of her duties.  *Green v. City of New York*, 465 F.3d 65, 86 (2d

Cir. 2006) ("A New York employer, such as the City, is liable for intentional torts, such as assault and

battery, committed by its employees provided that the tort is committed within the scope of the

plaintiff's employment"); *see also Colon v. City of Rochester*, 419 F. Supp. 3d 586, 603 (W.D.N.Y.

2019*); Lepore v. Town of Greenburgh*, 120 A.D.3d 1202, 1204 (2d Dep't 2014); *Eckardt v. City of*

*White Plains*, 87 A.D.3d 1049, 1051 (2d Dep't 2011).

Alternatively, the County Defendants assert that they are not liable for Defendant Silverman's actions based on the standard set forth in *Lauer v. City of New York*, 95 N.Y.2d 95, 99 (2000). However, *Lauer* did not deal with an intentional tort and is inapplicable.  In *Laurer*, the City of New York claimed that it was not liable for the negligence of its employee.  *Id*.  The employee, a medical examiner, improperly published a three-year-old boy's cause of death as blunt force trauma and ruled his death a homicide before further examination.  *Id*. at 97-98.  As a result, the police began a homicide investigation focusing on the boy's father.  *Id*. at 98.  Two months later, the medical examiner and a neurologist conducted a more in-depth examination and ruled that the boy's death was actually due to the rupture of a brain aneurism but failed to tell anyone.  *Id*.  As a result, the homicide investigation continued for seventeen months until the media revealed the correct cause of death.  *Id*.

The Court of Appeals specifically stated that the issue they were addressing was "whether a member of the public can recover damages against a municipality for its employee's negligence." *Id.* at 97.  The court went on to hold that while New York had waived its right to be sued for negligence based on the tortious actions of their employees, municipalities are not liable for the discretionary acts of their employees regardless of whether they rise to the level of negligence. *Id*. at 99.  The Court of Appeals went on to state, "[b]y contrast, ministerial acts--meaning conduct requiring adherence to a governing rule, with a compulsory result--may subject the municipal employer to liability for negligence." *Id*.

In *Williams*, the City of New York similarly tried to apply *Lauer* for the position that a municipality may not be held liable for the discretionary acts of their employees, whether

intentional or negligent. *Williams v. City of New York*, 121 F. Supp. 3d 354, 376 (S.D.N.Y. 2015). The Southern District held that *Lauer* did not apply where the complained of conduct was an intentional tort and not negligence. *Id.* Thus, to the extent that the County Defendants assert that Defendant Madison County could not be held liable for the alleged assault by Defendant Silverman because it was a discretionary act, they are incorrect, and their motion is denied.[7]

Additionally, as recited above, Plaintiff has sued Defendant Silverman in his official capacity and alleges that the conduct occurred while he was effectuating arrest. Dkt. No. 5 at ¶¶ 84-100. The County Defendants acknowledge that Defendant Silverman was acting within the scope of his employment during the alleged assault. Dkt. No. 30-6 at 22. As a municipality may be held liable for the intentional torts of its employees where they are acting within the scope of their employment, and the County Defendants do not assert any facts to the contrary, their motion for judgment on the pleadings regarding Plaintiff's claims for assault are denied.

---

[7] It is unclear what argument the County Defendants are trying to make. Their motion for judgment on the pleadings is merely a recitation of case law for points six, eight, nine, ten, eleven and twelve that is often contradictory and without any analysis. *See* Dkt. No. 30-6 at 19-24. For example, regarding their argument for point ten, the County Defendants state, "[m]oreover, the decision to arrest Plaintiff, as well as any other allegedly tortious conduct that followed, were discretionary acts that cannot form a basis for municipal liability." *Id.* at 23. They continue to state that *Lauer* prevents Defendant Madison County from being liable for Defendant Silverman's actions and then state that *Lauer* does not apply in the very next sentence. *Id.* at 23. Plaintiff's six sentence argument includes only four sentences of contradictory case law and then a summarizing sentence: "[a]s a result, the County may not be held liable for the State law based claims against Deputy Silverman on this additional basis." *Id.* While the remainder of the arguments in the County Defendants' motion for judgment on the pleadings are not quite as bald, they also provide only the most minimal amount of analysis, if any.

G.      **Negligence**

Plaintiff asserts a state law claim for negligence against all Defendants in all capacities. Dkt. No. 5 at ¶¶ 101-108.  Plaintiff does not specifically assert what action was negligent but states that "Defendants breached said special duty of care when Plaintiff became injured while in their custody."  *Id.* at ¶ 104.  Liberally construed, Plaintiff appears to allege either that Defendants breached a duty of care owed to him by kicking him and by failing to take him to the hospital. *See id*. at ¶¶ 101-108.  The City Defendants assert that Plaintiff has failed to adequately plead a negligence claim and is barred from asserting claims for negligence that he claims also amounted to excessive force.  Dkt. No. 18 at 22.  The County Defendants reject the notion that they may be sued for negligence.  Dkt. No. 30-6 at 22-23.

To the extent that Plaintiff claims negligence for being kicked while handcuffed, these claims must be dismissed.  "When a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000); *see also Stratakos v. Nassau Cnty.*, No. 2:15-cv-7244, 2019 WL 6699817, *16 (E.D.N.Y. Dec. 9, 2019) (citing cases).  Additionally, because Plaintiff has failed to allege any personal involvement of Defendant Silverman in the deprivation of medical care following his arrest, Plaintiff's negligence claims against the County Defendants are dismissed.  *Bryant*, 267 F. Supp. 3d at 479.

Regarding Plaintiff's claims for negligence for the conduct following his injury, Plaintiff must allege a special duty owed to him by the City Defendants.  *McLean v. City of N.Y.*, 12

N.Y.3d 194, 199 (2009) (quoting *Garrett v. Holiday Inns*, 58 N.Y.2d 253, 261 (1983)) ("[A]n agency of government is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public'").  "Such a duty, we have explained—'a duty to exercise reasonable care toward the plaintiff'—is 'born of a special relationship between the plaintiff and the governmental entity.'" *Id*. (quoting *Pelaez v. Seide*, 2 N.Y.3d 186, 198-99 (2004)).

> "A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation."

*Id*. at 199 (quoting *Pelaez*, 2 N.Y.3d at 199-200).

"It is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself." *Applewhite v. Accuhealth, Inc*., 21 N.Y.3d 420, 426 (2013).  "In situations where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity."  *Id*.

Plaintiff asserts that a special relationship was created by Defendants arresting him.  Dkt. No. 5 at ¶ 103.  The Court agrees.  "'[I]t is well-established in New York that when the State assumes physical custody of inmates or detainees, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard those individuals

from harm.'" *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 400-01 (S.D.N.Y. 2020) (quotation and other citations omitted); *Kemp v. Waldon*, 115 A.D.2d 869 (3d Dep't 1985).  The complaint plausibly alleges that Plaintiff was seriously injured during the course of his arrest and that the City Defendants, knowing that Plaintiff was in severe pain, declined to take him to the Upstate Emergency Department for treatment, despite being instructed to do so by healthcare personnel at Oneida Healthcare.  Accordingly, Plaintiff may proceed with his negligence claim relating to the City Defendants' alleged failure to provide medical care upon his arrest.

## H.    Failure to Provide Medical Care and Mental Health Assistance

Plaintiff asserts claims against Defendants for failure to provide medical care pursuant to New York Civil Rights Law § 28.  Dkt. No. 5 at ¶¶ 109-132.  Defendants assert that Plaintiff's claims should be dismissed as Section 28 was not enacted until three days after Plaintiff brought this action and two weeks before Plaintiff filed his amended complaint.  Dkt. No. 18 at 23; Dkt. No. 30-6 at 24.  Defendants further assert that Section 28 does not apply retroactively.  Dkt. No. 34 at 10; Dkt. No. 30-6 at 24.

New York Civil Rights Law § 28 was enacted on June 15, 2020 and provides that

> [w]hen a person is under arrest or otherwise in the custody of a police officer, peace officer or other law enforcement representative or entity, such officer, representative or entity shall have a duty to provide attention to the medical and mental health needs of such person, and obtain assistance and treatment of such needs for such person, which are reasonable and provided in good faith under the circumstances.

All parties agree that there is no case law examining Section 28.  However, they have asked the

Court to examine whether Section 28 may be applied retroactively.

"In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court established a two-part test to determine whether a statute applies retroactively." *Weingarten v. United States*, 865 F.3d 48, 54 (2d Cir. 2017).  "First, if Congress 'expressly prescribed' that a statute applies retroactively to antecedent conduct, 'the inquiry ends[ ] and the court enforces the statute as it is written,' save for constitutional concerns." *Id*. at 54-55 (quoting *Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co*., 391 F.3d 401, 405-06 (2d Cir. 2004), *as amended* (Jan. 7, 2005)) (alterations in original).  "Second, when a statute 'is ambiguous or contains no express command' regarding retroactivity, a reviewing court must determine whether applying the statute to antecedent conduct would create presumptively impermissible retroactive effects." *Id*. at 55 (quoting *Enterprise*, 391 F.3d at 406).  "If it would, then the court shall not apply the statute retroactively '"absent clear congressional intent" to the contrary.'" *Id*. (quoting *Enterprise*, 391 F.3d at 406).[8]

Plaintiff agrees that there is no express command regarding retroactivity.  Dkt. No. 31 at

---

[8] The County Defendants assert that the Court may not look to federal cases to determine whether a law is to be applied retroactively.  Dkt. No. 35 at 15.  Specifically, the County Defendants assert that Plaintiff's reliance on *Rankine v. Reno*, 319 F.3d 93, 98 (2d Cir. 2003) is inappropriate as only the New York Court of Appeals may determine whether a state law is to be applied retroactively and in *Rankine*, the Second Circuit examined a federal law.  *Id*. (citing Dkt. No. 31 at 19).  However, Plaintiff cited *Rankine* for the standard articulated by the Supreme Court in *Landgraf*.  *See* Dkt. No. 31 at 19.  The County Defendants cited *Landgraf* for a similar position in their motion for judgment on the pleadings.  *See* Dkt. No. 30-6 at 24.  And, the Court of Appeals has expressly adopted the retroactivity test articulated in *Landgraf* when examining state laws.  *See Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 365 (2020).  Thus, the Court rejects the County Defendants' assertion.

19.  Thus, the Court must determine whether applying the statute to antecedent conduct would create presumptively impermissible retroactive effects.  *Weingarten*, 865 F.3d at 54-55 (quoting *Enterprise*, 391 F.3d at 406).

A statute has retroactive effects where "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  *Landgraf*, 511 U.S. at 280.  "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.'"  *Id*.  However, "a statute that affects only the propriety of prospective relief or the nonsubstantive provisions governing the procedure for adjudication of a claim going forward has no potentially problematic retroactive effect even when the liability arises from past conduct."  *Regina Metro*, 35 N.Y.3d at 365 (quoting *Landgraf*, 511 U.S. at 273) (internal quotation marks omitted).

Plaintiff asserts that Section 28 should apply retroactively because it merely codifies a right already recognized by state and federal law.  Dkt. No. 31 at 19-20.  The Court disagrees as Section 28 broadens the scope of an arrestee's rights against an arresting officer.

"The Due Process Clause ... does require the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police."  *City of Revere*, 463 U.S. at 244.  Indeed, in the June 19, 2019 New York Senate Bill No. 6601, the New York Senate stated that the purpose of Section 28 was to "affirm[] the duty of police officers, peace officers, and other law enforcement representatives and entities to provide

attention to medical and mental health needs of persons in custody."  The Senate went on to state

that "the bill establishes a new right of action for [the] failure to provide reasonable and good faith

attention, assistance or treatment by an officer."  *Id*.

However, as the Second Department has recognized, an individual's rights pursuant to

Section 1983 are not without limitations and require proof of deliberate indifference.  *Mays v.*

*City of Middletown*, 70 A.D.3d 900, 904 (2d Dep't 2010).  As a pre-trial detainee, Plaintiff's

claims are brought pursuant to the Fourteenth Amendment and he must therefore demonstrate that

he suffered a "sufficiently serious need" and that the arresting officers "knew or should have

known of the excessive risk to the plaintiff's health."  *Yancey*, 828 Fed. Appx. at 803 (citing

*Darnell*, 849 F.3d at 29).  While Section 28 similarly requires that the arrestee "suffer[ a] serious

physical injury or significant exacerbation of an injury or condition" because they did not receive

"reasonable and good faith attention," Section 28 does not identify any mental state required of

the officers beyond requiring that they act in good faith.  N.Y. Civ. Rights Law § 28.  Rather, the

statute creates an affirmative duty on behalf of the officers to provide reasonable medical care for

an arrestee.  *See id*. ("When a person is under arrest or otherwise in the custody of a police officer,

... such officer . . . *shall have a duty* to provide attention to the medical and mental health needs of

such person, and obtain assistance and treatment of such needs for such person. ...") (emphasis

added); *see also* 2019 New York Senate Bill No. 6601, New York Two Hundred Forty-Third

Legislative Session ("By specifically mandating a duty of care, this bill seeks to redress these

wrongs and, in the future, prevent such persons from having to endure the infliction of distress

and harm").

While under the objective prong of the deliberate indifference standard a condition that may appear to be relatively minor, such as a dislocated joint or cavity, may be a sufficiently serious medical condition if it causes "extreme pain," *Johnson*, 412 F.3d at 403, the subjective prong requires that the denial of treatment must have caused "continuous, significant pain unnecessarily, and led to a needlessly prolonged period of delay in Plaintiff's receipt of medical treatment." *Robinson*, 2017 WL 3578700, at *6.  However, the legislative history of § 28 asserts that the purpose of this statute is to prevent even "needless, pain and suffering."  2019 New York Senate Bill No. 6601, New York Two Hundred Forty-Third Legislative Session.  While Section 28 certainly would encompass claims for deliberate indifference, it also creates an even greater duty to provide care to perhaps a wider range of injuries.  Thus, it cannot be said that Section 28 is merely a recitation of the deliberate indifference standard.

Further, because Section 28 extends the rights of arrestees, it has retroactive effects rather than merely affecting only the propriety of prospective relief or the nonsubstantive provisions governing the procedure for adjudication of a claim going forward.  As such, there is a presumption against retroactivity and Section 28 may only be applied retroactively if there is "a clear expression of the legislative purpose ... to justify a retroactive application of a statute." *Regina Metro*., 35 N.Y.3d at 370 (quoting *Gleason v. Gleason*, 26 N.Y.2d 28, 36 (1970)).  While "[t]here is certainly no requirement that particular words be used[,] ... the expression of intent must be sufficient to show that the Legislature contemplated the retroactive impact on substantive

rights and intended that extraordinary result."  *Id*. at 370-71 (citations omitted).

Plaintiff agrees that the legislature did not expressly call for or contemplate retroactive effects of the law.  Dkt. No. 31 at 19.  Rather, the legislative history indicates that the past harm by police misconduct was contemplated by the legislature, but that they ultimately determined that the law would become effective immediately without any discussion of retroactive effects. *See* 2019 New York Senate Bill No. 6601, New York Two Hundred Forty-Third Legislative Session.  Without more, there is not a clear expression of the legislative purpose to have the law apply retroactively as there is nothing the Court can rely on to determine that the Legislature contemplated the retroactive impact on substantive rights and intended that extraordinary result.

As such, the Court declines to apply Section 28 retroactively and Plaintiff's claims pursuant to Section 28 must be dismissed.  The County Defendants' motion for judgment on the pleadings and the City Defendants' motion to dismiss are both granted as to these claims.

## I.  Damages

Plaintiff's complaint seeks compensatory and punitive damages for conscious pain and suffering.  Dkt. No. 5 at 19.  The City Defendants assert that Plaintiff is barred from seeking such damages as damages for conscious pain and suffering are limited to survivorship actions and punitive damages are barred in § 1983 and ADA cases.  Dkt. No. 18-2 at 24.

The purpose of punitive damages is "'to punish the defendant and to deter him and others from similar conduct in the future.'"  *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (quoting *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992)).  "Punitive damages are available in a §

1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id*. (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

"It is well established that, as a municipal entity, defendant County is not subject to exposure to punitive damages, including for claims brought under 42 U.S.C. § 1983 and the ADA." *Levesque v. Clinton Cty.*, No. 9:10-CV-0787, 2012 WL 6948779, *8 (N.D.N.Y. Dec. 28, 2012) (citing *Ciraulo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000)). "Although punitive damages are not available against municipalities or against individuals sued in their official capacities, punitive damages may be awarded against defendants sued in their individual capacities." *Lin v. Cty. of Monroe*, 66 F. Supp. 3d 341, 362 (W.D.N.Y. 2014) (citing *De Michele v. City of New York*, No. 09 Civ. 9334, 2012 WL 4354763, *22 (S.D.N.Y. Sept. 24, 2012)).

Additionally, a plaintiff may recover compensatory damages for deliberate indifference to his medical needs. *See Poulos v. City of New York*, No. 14CV03023, 2018 WL 3750508, *5 (S.D.N.Y. July 13, 2018). "Compensatory damages are damages grounded in determinations of plaintiff's actual losses caused by the deprivation of her constitutional rights and 'may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation ... personal humiliation, and mental anguish and suffering.'" *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 308 (S.D.N.Y. 2001) (quoting *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). "To recover compensatory damages for deliberate indifference to his medical needs, plaintiff must present admissible evidence of pain and suffering

incurred during the period of deliberate indifference." *Poulos*, 2018 WL 3750508, at \*5 (citing

*Virgil v. Keith*, No. 10-CV-6479, 2016 WL 1298515, at \*5 (W.D.N.Y. Mar. 30, 2016)).

As set forth above, both compensatory and punitive damages are available to a plaintiff

who succeeds on a Section 1983 claim against a defendant in his or her individual capacity.

Therefore, the declines to dismiss Plaintiff's request for compensatory and punitive damages,

which is included in the complaint's prayer for relief, and not tied to any specific cause of action.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, the Court hereby

**ORDERS** that City Defendants' motion to dismiss (Dkt. No. 18) is **GRANTED in-part**

**and DENIED in-part;** and the Court further

**ORDERS** that County Defendants' motion for judgment on the pleadings (Dkt. No. 30) is

**GRANTED in-part and DENIED in-part;**[9] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 2, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[9] As a result of this Memorandum-Decision and Order, the following claims remain: (1) excessive force against Defendant Silverman; (2) deliberate indifference/failure to intervene against Defendants Slator and Clark; (3) the ADA claims against Defendants City of Oneida and Madison County relating to Plaintiff's bipolar disorder and arrest; (4) the assault claim against Defendant Silverman in his individual capacity and against Defendant Madison County; and (5) the negligence claim against the City Defendants for failure to provide medical care.