**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JERRY DURR,**

                                        **Plaintiff,**
                    **vs.**

                                                                    **5:20-CV-00662**
                                                                    **(MAD/TWD)**

**DANIEL SLATOR,** *Police Officer*;
**WILLIAM CLARK,** *Police Sergeant*;
**CITY OF ONEIDA, NEW YORK;**
**AARON SILVERMAN,** *Sheriff's Deputy*;
**and MADISON COUNTY, NEW YORK,**

                                        **Defendants.**
_____

**AARON SILVERMAN,** *Sheriff's*
***Deputy*; and MADISON COUNTY,**
**NEW YORK,**

                              **Cross-Plaintiffs,**
                    **vs.**

**DANIEL SLATOR,** *Police Officer*;
**WILLIAM CLARK,** *Police Sergeant*;
**and CITY OF ONEIDA, NEW YORK,**

                              **Cross-Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**LAW OFFICE OF DAVID**                   **DAVID A. LONGERETTA, ESQ.**
**A. LONGERETTA, PLLC**
298 Genesee Street

1

Utica, New York 13502
Attorneys for Plaintiff

**LAW OFFICE OF ZACHARY**　　　　ZACHARY C. OREN, ESQ.
**C. OREN, ESQ.**
401 Rutger Street
Utica, New York 13501
Attorneys for Plaintiff

**KENNEY SHELTON LIPTAK**　　　　DAVID H. WALSH, IV, ESQ.
**NOWAK LLP**　　　　DANIEL CARTWRIGHT, ESQ.
4615 North Street
Jamesville, New York 13078
Attorneys for Defendants Daniel Slator,
William Clark, and City of Oneida

**THE LAW OFFICE OF KEVIN G.**　　　　KEVIN G. MARTIN, ESQ.
**MARTIN**
1600 Genesee St.
Utica, New York 13502
Attorneys for Defendants
Aaron Silverman and Madison County

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff, Jerry Durr, brought this action on June 12, 2020, asserting thirteen causes of

action pursuant to 42 U.S.C. §§ 1983, 1988, Title II of the Americans with Disabilities Act

("ADA"), the Fourth, Fifth, Sixth, and Fourteenth Amendments, and state law claims against

Defendants Officer Daniel Slator, Sergeant William Clark, the City of Oneida, New York,

Sheriff's Deputy Aaron Silverman, and Madison County, New York.  Dkt. Nos. 1, 5.  Plaintiff's

claims arise out of his arrest on March 15, 2019, and his subsequent detainment.  Dkt. Nos. 1, 5.

On September 2, 2021, the Court issued a Memorandum-Decision and Order (the "Order") dismissing all but five of Plaintiff's claims. Dkt. No. 36. On March 9, 2023, the Court signed a joint stipulation by all parties to dismiss with prejudice Plaintiff's negligence and deliberate indifference claims. Dkt. No. 67 at 1. Plaintiff's remaining claims are: (1) excessive force against Defendant Silverman; (2) ADA claims against Defendants City of Oneida and Madison County relating to Plaintiff's bipolar disorder and arrest; and (3) assault claims against Defendant Silverman in his official capacity and Defendant Madison County.

On March 20, 2023, Defendants Silverman and Madison County (hereinafter the "County Defendants") filed a motion for summary judgment. Dkt. No. 69. Also on March 20, 2023, Defendants City of Oneida, William Clark, and Daniel Slator (hereinafter "City Defendants") filed a separate motion for summary judgment, although all claims against William Clark and Daniel Slator have been previously dismissed. Dkt. No. 68. Currently before the Court are the City Defendants' and the County Defendants' motions for summary judgment, Plaintiff's responses to the motions for summary judgment, and Defendants' replies. Dkt. Nos. 68, 69, 77, 78, 80, 81. Based on the following, the City Defendants' and County Defendants' motions for summary judgment are denied.

The underlying facts of the case are summarized in the Order. *See Durr v. Slator,* 558 F. Supp. 3d, 1 (N.D.N.Y. 2021).

## II. DISCUSSION

**A.      Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions on its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the Court may not rely solely on the moving party's Rule 56.1 statement; rather the Court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts', . . . and they may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.     Excessive Force**

Plaintiff brings a Section 1983 claim against the County Defendants alleging that Defendant Silverman kicked Plaintiff while he was handcuffed in violation of the Fourth Amendment.  Dkt. No. 5 at ¶¶ 19-22.  The County Defendants assert that Plaintiff's claim must be dismissed because "no reasonable jury could believe that Plaintiff was kicked by Silverman," but even if Officer Silverman did kick Plaintiff, then it was "objectively reasonable under all of the circumstances."  Dkt. No. 69-8 at 9, 10.

"Excessive force claims related to an arrest or seizure are evaluated under the Fourth Amendment using an 'objective unreasonableness' standard." *Bogart v. City of New York*, No. 13-CV-1017, 2016 WL 4939075, *7 (S.D.N.Y. Sept. 6, 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  Because the force used in the present matter occurred during Plaintiff's arrest, his claims are properly analyzed under the reasonableness standard set forth in *Graham*.  *See Lopez, v. Gerace*, No. 5:18-CV-952, 2023 WL 7281653, *8 (N.D.N.Y. Nov. 3, 2023) (citing *Francis v. Vill. of Potsdam*, No. 8:20-CV-1097, 2023 WL 2655677, *3 (N.D.N.Y. Mar. 27, 2023)).  "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness

standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).

### 1. Reasonableness of Officer Silverman's alleged use of force

To determine whether the force used was reasonable, the Court considers the risk the officers were in at the time they had to make the force application decision. *See Graham*, 490 U.S. at 396-97. The Court also considers whether Plaintiff was resisting arrest, attempting to evade arrest or threatening the officers, and the severity of the crime Plaintiff was arrested for. *Id*.

When someone resists arrest or threatens the arresting officer, the officer is justified in using "some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used…against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000). Further, "'reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury.'" *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002) (quoting *Gonzalez v. City of New York*, No. 98-CV-3084, 2000 WL 516682, *4 (E.D.N.Y. Mar. 7, 2000)), *aff'd*, 59 Fed. Appx. 409 (2d Cir. 2003). "[T]o support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force." *Durr*, 558 F. Supp. 3d at 16 (citing *Feliciano v. Thomann*, 747 Fed. Appx. 885, 887 (2d Cir. 2019)).

Nevertheless, while "not every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (citing *Graham*, 490 U.S. at 396), a show of force by an officer that is disproportionate to the risk of harm may support a claim for excessive force. *See Gersbacher v. City of New York*, No. 1:14-CV-7600, 2017 WL 4402538, *11 (S.D.N.Y. Oct. 2,

2017) (denying the defendant police officers' motion for summary judgment on the plaintiff's excessive force claim where evidence showed that the plaintiff verbally opposed the arrest, but did not attempt to flee or attack the arresting officer, calling into question whether the force used by the arresting officer, which caused relatively minor injuries, was excessive).  The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Plaintiff alleges that Defendant Silverman kicked him while he was already handcuffed, Dkt. No. 5 at ¶¶ 15-17, causing injury to his knee which was later diagnosed as "compartment syndrome." Dkt. No. 68-7 at ¶¶ 10-12.  As stated in the Order, "courts have distinguished between kicking an arrestee prior to and following their handcuffing." *Durr*, 558 F. Supp. 3d at 17 (citing *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 342 (E.D.N.Y. 2006) (citing *Pierre-Antoine v. City of New York*, No. 04 CIV. 6987, 2006 WL 1292076, *4 (S.D.N.Y. May 9, 2006); *Graham v. Springer*, No. 03-CV-6190, 2005 WL 775901, *6 (W.D.N.Y. Apr. 5, 2005); *Jones v. Ford*, No. 00-CV-0934, 2002 WL 1009733, *4 (M.D.N.C. Feb. 15, 2002))).

The County Defendants assert that kicking Plaintiff's knee was "*de minimis* and objectively reasonable under all of the circumstances." Dkt. No. 69-8 at 10.  The County Defendants further claim that Plaintiff was spitting towards Officer Slator, and "in the age of AIDS and other communicable diseases, this constitutes a dangerous, potentially fatal, situation for the officer." Dkt. No. 69-8 at 12.  The County Defendants argue that this dangerous situation required Officer Silverman to use a leg-sweep to "get the Plaintiff under control." *Id.*  However,

"spitting does not give rise to an excusable use of force *per se*."[1]  *Durr*, 558 F. Supp. 3d at 17.

According to Plaintiff, he "was not attempting to escape," and was merely "yelling" at Defendants

when "some spittle was accident[ally] ejected from Plaintiff's mouth which went towards but did

not make contact with Defendant Slator." Dkt. No. 77-11 at 16.  Defendants claim instead that

Plaintiff was "resisting arrest" when he allegedly spat in the direction of the officers. Dkt. No. 69-

8 at 12.  Defendants and Plaintiff have presented conflicting testimony as to whether Plaintiff was

resisting arrest at the time of the alleged force, or if spittle was merely flying from his mouth as

he yelled without resisting arrest from a handcuffed position.  At this stage of the proceedings, the

Court must assume that Plaintiff was not resisting when Defendant Silverman allegedly kicked

him in the knees with enough force that he fell to the ground and sustained injury that required

hospitalization for compartment syndrome.  *See* Dkt. No. 68-7 at ¶ 12.[2]

Kicking an arrestee who is not threatening any third parties and who is not resisting arrest

is excessive force.  *See Jones v. Treubig*, 963 F.3d 214, 238 (2d Cir. 2020) (reversing a judgment

---

[1] At several times in his reply memoranda Plaintiff erroneously refers to this and other legal precedent cited in the Order as "law of the case."  Because the standard for a motion to dismiss is different from the standard of review for a motion for summary judgment, just because the Plaintiff's pleadings alleged legal claims sufficient to survive the former, it does not follow that the Plaintiff has necessarily alleged sufficient questions of fact to prevail at the latter.  *See Linares v. McLaughlin*, 423 Fed. Appx 84, 85 (2d Cir. 2011) (noting that "different standards apply to Rule 12(b)(6) motions to dismiss and Rule 56 motions for summary judgment").  "The denial of a defendant's motion to dismiss is not a *final* determination on the merits barring further litigation of the claims in question under the doctrine of res judicata." *Id.* (emphasis in original).  Even after denying a motion to dismiss, the Court may still grant a defendant's motion for summary judgment if, "based upon the evidence presented, there was no genuine dispute as to any material fact and the moving party was entitled to judgment as a matter of law."  *Id.*
[2] As Plaintiff notes, his arrest was not captured on video.  As such, the Court must rely on the conflicting statements provided by the parties and the Court is not permitted to make credibility determinations on a motion for summary judgment.

as a matter of law for the defendants because officers unreasonably used excessive force when they tased the plaintiff who was "no longer resisting," and already on the ground, even though the plaintiff was not yet handcuffed); *Roguz v. Walsh*, No. 09-CV-1052, 2012 WL 6049580, *4 (D. Conn. Dec. 5, 2012) (denying summary judgment for the defendants on the plaintiff's excessive force claim because of a factual dispute as to whether the plaintiff was actively resisting arrest and spitting at the defendants before and after being handcuffed, or if the plaintiff was merely spitting out blood after the defendants attacked him). Even the use of a leg sweep can be excessive force when used to take down a suspect who not resisting arrest or attempting to flee. *See Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) (finding police deputy used excessive force when he used a leg sweep maneuver after verbal commands failed to compel the plaintiff to drop the water balloons he was holding). Likewise, in *Hadley*, there was evidence the plaintiff initially resisted arrest but was punched in the stomach only after he stopped resisting, which force the Court stated would be a constitutional violation. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that a gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force").

In *Newell*, there was a question of fact whether the plaintiff had been resisting arrest and "the officers' efforts to restrain him at the time he was kneed, punched, and kicked." *Newell v. Law*, No. 2:18-CV-1162, 2022 WL 836771, *10 (W.D. Pa. Mar. 21, 2022). Denying a motion for summary judgment, the court found that "defendants' use of force in the form of kneeing, punching and kicking plaintiff could be found by a reasonable jury to have been neither objectively necessary nor a reasonable use of force under the totality of the circumstances." *Id.*;

*see also Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (finding excessive force was used where "[t]here was no evidence that [the plaintiff] was resisting arrest or attempting to flee" at the time the force was used).

A reasonable juror could find that Plaintiff was not resisting arrest and that, given that Plaintiff was handcuffed, in front of his body to accommodate an injured shoulder, that a kick to Plaintiff's knee which knocked him to the ground was unreasonable force.

### *2. Whether a Reasonable Jury could Believe that Plaintiff was Kicked by Officer Silverman*

The County Defendants further argue that Plaintiff's excessive force claim should be dismissed because "no reasonable jury could conclude that Plaintiff was kicked by Deputy Silverman." Dkt. No. 69-8 at 10.  The County Defendants rely on *Scott v. Harris* for the proposition that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should adopt that version of the facts." *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Unlike *Scott*, where the plaintiff's allegations contradicted what was shown on dash cam video, here, there is no undisputed video record.  *See Scott v. Harris*, 550 U.S. 372 378 n.5 (2007) ("We are happy to allow the videotape to speak for itself"); *see also Sechler v. Thomas,* No. 3:22-CV-3, 2023 WL 5750506, *4 (W.D. Pa. Sept. 6, 2023) (supporting the proposition that video evidence may be considered an undisputed record; "when there are opposing stories, one of which is blatantly contradicted by a video record, the video record presents the undisputed facts for purposes of ruling on a motion for summary judgment").  The County Defendants' allegation that "Durr

admit[s] [n]o reasonable jury could possibly believe Durr's version of the events," is unsubstantiated and in blatant contradiction to Plaintiff's claim.  Dkt. No. 69-8 at 10.  As Plaintiff notes in his reply memorandum, whether Defendant Silverman kicked Plaintiff is a disputed question of fact.  Dkt. No. 77-11 at 14 (noting that, in his deposition, Defendant Slator "stated that he could not determine if Defendant Silverman kicked Plaintiff's leg or not").

The County Defendants assert that, in lieu of a video record, the police report filed the day after the arrest contradicts Plaintiff's claim that he was kicked.  Dkt. No. 81 at 7.  A written police report is not an undisputed record in the same way that a contemporaneous video recording of events is.

Defendants claim that "no jury could possibly believe an intoxicated, ranting, aggressive and violent person who pled guilty to two charges, had been arrested over twenty times, often because he failed to take his medications." Dkt No. 81 at 7.  This argument invites the Court to make a credibility determination that is not permitted at summary judgment.  Viewing the facts in the light most favorable to the nonmoving party, there is a "genuine" dispute, which is not resolved by video evidence of which there is none, as to whether Defendant Silverman kicked Plaintiff.  *See Scott*, at 380 (quoting Fed. Rule Civ. Proc. 56(c)).

### 3. Qualified Immunity

The County Defendants assert that, based on qualified immunity, they are shielded from liability.  *See* Dkt. No. 69-8 at 8.  Defendants bear the burden of proving that the privilege of qualified immunity applies because it is an affirmative defense.  *See Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Francis v. Vill. of Potsdam*, No. 8:20-CV-01097, 2023 WL 2655677, *4 (N.D.N.Y. Mar. 27, 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court is mindful that qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation,'" and that this privilege is "'effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

"Courts engage in a two-part inquiry to determine whether the doctrine of qualified immunity bars a suit against government officials." *Echols v. Knoth*, No. 1:20-CV-00519, 2022 WL 2463035, *5 (N.D.N.Y. July 6, 2022) (citing *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006)). First, a court must consider whether the facts, construed in favor of the party asserting the injury, "demonstrate a violation of a constitutional right." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, a court must determine "whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

"Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would have understood that what he is doing'" is unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Where the right at issue in the circumstances confronting police officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified

immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights,'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted), meaning "'officers of reasonable competence could disagree'" on the legality of the action at issue in its particular factual context. *Id*. (quotations omitted).  Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 2023 (2014) (internal quotation marks and citation omitted).

"'It is well established that qualified immunity may operate as a defense to excessive force claims.'" *Betts v. Rodriquez*, No. 15-CV-3836, 2017 WL 2124443, *4 (S.D.N.Y. May 15, 2017) (quotation omitted).  "Even if the force is objectively unreasonable, an officer may still be eligible for qualified immunity if it was objectively reasonable for the officer to believe that her action did not violate clearly established law." *Keene v. Schneider*, 350 Fed. Appx. 595, 596 (2d Cir. 2009). "The Supreme Court has made clear that officers who have used excessive force may be entitled—under the qualified immunity doctrine—to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'" *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, *17 (S.D.N.Y. Sept. 24, 2012) (quoting *Saucier*, 533 U.S. at 206).

It is well established that "police officers are not entitled to qualified immunity when they use leg sweep maneuvers to take down arrestees who are not resisting." *Durr*, 558 F. Supp. 3d at 19 (collecting cases).  In *Frantz*, the plaintiff alleged that she was not resisting arrest when the defendant police officers brought her to the ground. *Frantz v. City of Oswego*, No. 5:15-CV-

1192, 2017 WL 4737258, *2 (N.D.N.Y. Oct. 19, 2017).  The defendants claimed that the plaintiff was resisting arrest and shouting.  *Id.*  In *Frantz*, the court held that, drawing inferences in the plaintiff's favor at the summary judgment stage, the plaintiff was not a threat to anyone and was not resisting arrest or attempting to flee at the time of her arrest.  *See id.* at *6.  Likewise, viewing all inferences in Plaintiff's favor, at the time that he was arrested for obstructing traffic, he consented to being handcuffed, was not attempting to flee, was not resisting arrest, and was not a threat to anyone.

Because a material factual dispute remains as to the circumstances surrounding the use of force in this case, summary judgment on qualified immunity is inappropriate.  *See, e.g., Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (holding that "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness") (citation omitted).  Accordingly, Defendants' motion for summary judgment under the doctrine of qualified immunity is denied.

**C.    Plaintiff's Title II Claims Under the ADA** [3]

Defendant City of Oneida ("Oneida") asserts that Plaintiff's ADA claims must be dismissed because Plaintiff's failure to take his bipolar management medications on the day of his arrest renders Plaintiff's bipolar disorder not a qualifying disability.  *See* Dkt. No. 68-1 at 21. Additionally, Oneida argues Plaintiff's drunkenness supersedes any disabilities such that he is not qualified under the ADA.  *See id*.  Even if Plaintiff had a qualifying disability under the ADA,

---

[3] The County Defendants move to dismiss the Third and Sixth Causes of Action for discrimination under Title II of the ADA; however, of the two, only the Third Cause of Action remains because the Sixth Cause of Action was dismissed in the Order.  *See Durr*, 558 F. Supp. 3d at 46.

Oneida asserts that it is not liable because Officer Slator had no notice of Plaintiff's disability and acted reasonably under the circumstances. *See* Dkt. No. 68-1 at 21-22. Plaintiff asserts that, under the amended ADA, he has sufficiently established a qualifying disability which Oneida had constructive notice of. *See* Dkt. No. 78 at 6, 9-11. Plaintiff further asserts that he was denied available accommodations. *See id*. at 15.

Defendant Madison County ("Madison County") asserts that Plaintiff's ADA claims must be dismissed because an arrest is not a "program, service, or activity" under the ADA, and no duty of reasonable accommodation arose because the officers had no notice of Plaintiff's disability, made attempts to accommodate Plaintiff's disability, and because there were exigent circumstances. Dkt. No. 69-8 at 21, 23-26. Plaintiff alleges that an arrest is a qualifying "program, service or activity," from which a disabled person can be excluded. Dkt. No. 77-11 at 21. Plaintiff further contends that there are several accommodations he could have received but did not. *See id*. at 19. Plaintiff argues that there is no notice requirement for ADA claims for improper accommodation during an arrest, but in the alternative, that any notice requirement is satisfied by constructive notice. *See id.* at 26. A reasonable juror could find that Plaintiff's actions gave Defendants notice of his mental health disability.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege:

> "that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."

*Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272-73 (2d Cir. 2003)).

The Second Circuit has explained that, "[a] plaintiff may base [a] Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation." *Tardif v. City of N.Y.*, 991 F.3d 394, 404 (2d Cir. 2021).

### 1. *Qualifying Disability*

A qualifying "disability" under the ADA is a "physical or mental impairment that substantially limits one or more major life activities," or "being regarded as having such an impairment." 29 C.F.R. § 1630.2(g).  A mental impairment is "[a]ny mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability." 29 C.F.R. § 1630.2(h).  "[M]ajor life activities include . . . learning, reading, concentrating, thinking . . . and working," as well as "the operation of a major bodily function, including . . . neurological, brain . . . [and] endocrine . . . functions." 42 U.S.C. § 12102(2)(A)-(B).  The Equal Employment Opportunity Commission has clarified that when applying the ADA, the disability must "be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the statute]."  29 C.F.R. § 1630.2(j)(1)(i); *accord Parada v. Banco Indus. De Venezuela*, *C.A.*, 753 F.3d 62, 69 (2d Cir. 2014).  It follows that, "the term major shall not be interpreted strictly to create a demanding standard for disability," 29 C.F.R. § 1630.2(i)(2), and "the term 'substantially limits' shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i).

### a. *Physical or Mental Impairment*

Oneida argues that Plaintiff has failed to establish a qualifying disability because Plaintiff chose not to take his bipolar management medications on the day of the arrest, or, alternatively, because "Plaintiff was drunk—not suffering from a mental episode." Dkt. No. 68-1 at 21. Oneida claims that mental health impairments "are not considered a 'disability' . . . where a plaintiff has a record of mental disability that is effectively controlled with medications." *Id.* (citing *Horwitz v. L & J.G. Stickley, Inc.*, 122 F. Supp. 2d 350, 354 (N.D.N.Y. 2000); *Sherman v. New York Life Ins. Co.*, No. 96-CV-9665, 1997 WL 452024, *3 (S.D.N.Y. Aug. 7, 1997)). Oneida does not cite to any place in the record to support the claim that Plaintiff's bipolar disorder was effectively controlled with medications. Instead, Oneida cites to another case to make the assertion that Plaintiff's medications "'rendered [him] able to perform [his] major life activities.'" *Id.* (citing *Horwitz*, 122 F. Supp. 2d at 357).

Oneida's unsubstantiated claim that Plaintiff's bipolar disorder was effectively controlled because he was prescribed medication erroneously relies on case law that predates the ADA Amendments Act ("ADAAA") of 2008, which broadened the definition of disability. *See Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 342 (E.D.N.Y. 2008) (applying the pre-amended ADA standard and finding that "an individual who is able to virtually eliminate the effects of an impairment through medication is not considered disabled for purposes of the ADA"). 42 U.S.C. § 12102, which defines disability within the meaning of the ADA, was last amended in 2008. *See Montague v. Nat'l Grid USA*, No. 17-CV-3, 2020 WL 6833418, *8 (W.D.N.Y. Nov. 20, 2020). Under the ADAAA, "the intent of Congress was to make it easier for

claimants to obtain protection under the ADA, 29 C.F.R. § 1630.1(c)(4)." *Id.*  The current ADA "no longer considers whether medication or other ameliorative measures can avoid episodes." *Hoeffner v. Cnty. of Orange*, No. 17-CV-9344, 2020 WL 1165851, *6 (S.D.N.Y. Mar. 10, 2020) (concluding at summary judgment that there was sufficient evidence to find that the plaintiff's "asthma was substantially limiting," despite the many medications the plaintiff took to treat asthma.); *see also Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. 215, 219 (5th Cir. 2018) (determining that because the plaintiff "began receiving effective medical treatment around the time" of the alleged discrimination "does not establish that he no longer had a disability," because "drawing any such inference would contravene the ADA's broad definition of 'disability'").

Plaintiff argues that, under the ADAAA's broader definition of disability, he has adequately alleged facts supporting a finding that his bipolar disorder was a qualifying disability. Dkt. No. 78-2 at 6.  "'Bipolar Affective Disorder has been recognized as a disability under the ADA.'" *Mercado v. Dep't of Corr.*, No. 3:16-CV-1622, 2018 WL 2390139, *10 (D. Conn. May 25, 2018) (quoting *Glowacki v. Buffalo Gen. Hosp.*, 2 F. Supp. 2d 346, 351 (W.D.N.Y. 1998)). However, "[t]he ADA requires an 'individualized assessment' which prevents the Court from determining that Plaintiff is disabled solely on the basis of his diagnosis." *Id*. (citing 28 C.F.R. § 35.108(d)(1)(vi)); *see also Williams v. N.Y.C. Dep't of Educ.*, No. 18-CV-11621, 2020 WL 906386, *4 (S.D.N.Y. Feb. 25, 2020) (finding that "[n]ot every impairment is a 'disability' within the meaning of the ADA") (internal quotation omitted).

Plaintiff's complaint alleges that he was diagnosed with, and has received, social security disability for bipolar depression and attention deficit disorder since 2014.  Dkt. No. 5 at ¶ 37.

Additionally, he is prescribed a "multitude of prescription medications" and without such medications may become an "emotional[ly] disturbed person", as he allegedly was on March 15, 2020. *Id*. at ¶¶ 13, 38-39. Plaintiff claims that without his medication he suffered a psychotic episode and began running in the street and obstructing traffic. *Id*. at ¶ 10. Furthermore, Plaintiff claims that his bipolar disorder has "substantial[ly] impaired major life activities." *Id*. at ¶ 40; Dkt. No. 78-2 at 6.

Oneida claims that "Plaintiff was not suffering from a qualified disability, but instead . . . Plaintiff was drunk." Dkt. No. 68-1 at 21. However, there is no support for the implied allegation that drunkenness would override or negate Plaintiff's bipolar disorder. Therefore, whether Plaintiff was drunk at the time of the incident is immaterial to whether Plaintiff's bipolar disorder was also a qualifying disability at the time.[4]

Madison County erroneously asserts that Plaintiff's failure to take medication on the day of the incident "is a superseding cause of the injury in this case." Dkt. No. 69-8 at 19. However, a reasonable juror could find that Plaintiff's failure to take medication because he was having "a good day" is consistent with the symptoms of someone with bipolar disorder. Dkt. No. 69-4 at

---

[4] In response to the City Defendants' motion for summary judgment, Plaintiff argues that "he was not intoxicated at the time of his arrest," but even if he was, then "said intoxication is a qualifying disability under the ADA." Dkt. No. 78 at 6-8. Because neither the complaint nor the amended complaint mentions alcoholism or an alcohol-related disability, the Court will not consider intoxication as a qualifying disability with respect to the ADA claims. *See Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment"); *see also Avillan v. Donahoe,* 483 Fed. Appx. 637, 639 (2d Cir. 2012) (holding that the district court did not err in disregarding allegations the plaintiff raised for the first time in response to the defendant's motion for summary judgment).

26; *see Roytman v. Comm'r of Soc. Sec.*, No. 19-CV-3626, 2020 WL 5848615, *9 (E.D.N.Y. Sept. 30, 2020) (remanding the Social Security Administration's decision to deny benefits to a plaintiff with bipolar disorder for failure to consider "the possibility, if not likelihood, that any failure by Plaintiff to take his medication is part of the symptomatology for his disorders").  "[T]reatment noncompliance is common among individuals diagnosed with bipolar I disorder." *Id.* (citing *Rozanski v. Berryhill*, No. 17-CV-1904, 2019 WL 276205, *4 (D. Conn. Jan. 22, 2019) (citation omitted)); *see also Roytman*, 2020 WL 5848615, at *9 ("During a manic episode, individuals often do not perceive that they are ill and vehemently resist efforts to be treated").  (Alterations omitted).

### b.  Major Life Activity that has Been Substantially Limited

"To successfully plead a qualifying disability under the ADA, a plaintiff 'must allege which major life activity or activities their impairment substantially affects.'" *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, *9 (S.D.N.Y. May 31, 2020) (quoting *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314, 2020 WL 2489774, *10 (E.D.N.Y. May 18, 2020)); *see also O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502, 2020 WL 1244474, *12 (S.D.N.Y. Mar. 16, 2020) ("[A] qualifying disability 'must limit a major life activity and the limitation must be substantial'").  Under the ADAAA, "[t]he term '[s]ubstantially limits' is not meant to be a demanding standard . . . but, it is 'well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations.'" *Collins v. Giving Back Fund*, No. 18-CV-8812, 2019 WL 3564578, *13 (S.D.N.Y. Aug. 6, 2019) (quoting

*Whalley v. Reliance Grp. Holdings, Inc*., No. 97-CV-4018, 2001 WL 55726, *4 (S.D.N.Y. Jan. 22, 2001)).

Under the ADAAA, major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). Major life activities also include "the operation of a major bodily function, including but not limited to . . . neurological" and "brain" functions. *Id.*

The determination of "'whether an impairment substantially limits a major life activity [must] be made without regard to the ameliorative effects of mitigating measures' such as medication, psychotherapy, or behavioral therapy." *Mercado v. Dep't of Corr.*, No. 3:16-CV-1622, 2018 WL 2390139, *10 (D. Conn. May 25, 2018) (quoting 28 C.F.R. §§ 35.108(d)(1)(viii), 35.108(d)(4)); *see also Levy v. New York State Dep't of Env't Conservation*, 297 F. Supp. 3d 297, 312 (N.D.N.Y. 2018) (finding that, under the ADAAA, a plaintiff who had Type One diabetes was disabled even though he took medication, because under the amended ADA "[t]he efficacy of plaintiff's treatments at controlling his diabetes is . . . not a relevant consideration for determining whether his diabetes is a disability"); *Hensel v. City of Utica*, No. 6:15-CV-0374, 2017 WL 2589355, *4 (N.D.N.Y. June 14, 2017) (finding that the plaintiff's diabetes is an ADA qualifying disability and noting that "the Court is required to consider [the plaintiff's] diabetes in its untreated state").

Taken with the understanding that the threshold for disability under the ADAAA is "not an exacting one," a reasonable juror could conclude that Plaintiff's bipolar disorder was a mental

impairment that substantially limited his major life activities when he does not take his medication and becomes emotionally disturbed.  *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (clarifying that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one"); *see also Mercado*, 2018 WL 2390139, at *10 (finding that the plaintiff's bipolar disorder substantially affected major life activities where he "'demonstrated behavioral regressions, including threatening and intimidating staff'" when off of his medication).

### 2. Defendants are Subject to the ADA for Pre-Arrest Interactions

As to the second element of the *prima facie* case, Madison County disputes that they are subject to the ADA for events that occurred during an arrest.  Dkt. No. 69-8 at 21-22 (alleging that "there is still a question as to whether an arrest is a program, service, or activity under the ADA"). The County Defendants rely on Fifth Circuit case law that predates the ADAAA to allege that "Title II does not apply to an officer's on-the-street responses to reported disturbances."  *Id.* at 21 (citing *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000)).  However, relying on Second Circuit case law and the 2008 ADAAA, the Court has previously concluded that Title II of the ADA does apply to officer's on-the-street interactions, noting the following:

> "A number of courts have considered whether interactions between law enforcement and disabled individuals—whether initiated by the disabled individual or the police and whether the interaction culminates in an arrest—are 'services, programs, or activities' subject to the requirement of accommodation under Title II of the ADA."

*Durr*, 558 F. Supp. 3d at 27 (quoting *Williams v. City of New York*, 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015) (internal citations omitted)); *see also Tardif*, 991 F.3d at 404 (applying Title II of

the ADA to an arrestee's pre-arraignment detention).  "The only reasonable interpretation of Title

II is that law enforcement officers who are acting in an investigative or custodial capacity are

performing 'services, programs, or activities' within the scope of Title II."  *Williams v. City of New*

*York*, 121 F. Supp. 3d 354, 368 (S.D.N.Y. 2015).  This Court previously found that

> "'there are at least two types of Title II claims applicable to arrests,'
> including '(1) wrongful arrest, where police wrongly arrest someone
> with a disability because they misperceive the effects of that
> disability as criminal activity; and (2) reasonable accommodation,
> where, although police properly investigate and arrest a person with
> a disability for a crime unrelated to that disability, they fail to
> reasonably accommodate the person's disability in the course of
> investigation or arrest, causing the person to suffer greater injury or
> indignity in that process than other arrestees."

*Durr*, 558 F. Supp. 3d at 32 (quoting *Williams*, 121 F. Supp. 3d at 369)(other citation omitted).

As this court previously explained, it agrees with other cases from the Second Circuit which have

concluded that "Title II of the ADA requires police officers to provide reasonable

accommodations to arrestees." *Id.* (collecting cases); *accord Reyes v. Town of Thomaston*, No.

3:18-CV-831, 2020 WL 5849529, *3-4 & n.1 (D. Conn. Sept. 30, 2020); *Sage v. City of*

*Winooski*, No. 2:16-CV-116, 2017 WL 1100882, *3-4 (D. Vt. Mar. 22, 2017).  Accordingly,

Defendants are subject to the ADA.

### 3. Discrimination by Reason of Plaintiff's Disabilities

For the third element of Plaintiff's *prima facie* case of discrimination under the ADA,

Plaintiff must establish that he was denied the opportunity to participate in or benefit from

Defendants' services, programs, or activities, or was otherwise discriminated against by

Defendants, by reason of his disabilities.  *See* 42 U.S.C. § 12102(1)(A).

23

### a. Notice

Defendants assert that Plaintiff's ADA failure to accommodate claim must be dismissed because Plaintiff cannot prove that Defendants discriminated against him by reason of his disability as Defendants had no notice of Plaintiff's disability.  *See* Dkt. No. 68-1 at 20-22; Dkt. No. 69-8 at 23 ("Knowledge of a disability is a prerequisite to discriminating by reason of that disability") (citing *Butchino v. City of Plattsburg*, No. 8:20CV796, 2022 WL 137721, *10 (N.D.N.Y. Jan. 14, 2022)); *Id.* at 19 (asserting that City Defendants had no notice because Plaintiff "never told Officer Slator about his psychiatric conditions prior to the encounter").

However, a plaintiff need not allege that they told the officers of their disability to make out a failure to accommodate claim.  *See Durr*, 558 F. Supp. 3d at 33 (citing *Sage v. City of Winooski*, No. 2:16-CV-116, 2017 WL 1100882, *4 (D. Vt. Mar. 22, 2017) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)).  Plaintiff need only to allege that his disability was "obvious."  *Id.* ("noting that the Second Circuit has specifically held that reasonable accommodations are required if the disability is obvious").  At issue is whether Defendants can be liable for failure to accommodate a disability they were not explicitly informed of.

Plaintiff asserts that the officers had constructive notice of his disability and therefore should have provided accommodations.  *See* Dkt. No. 77-11 at 26.  Plaintiff claims that when Defendants Slator and Silverman arrived on the scene he was clearly exhibiting signs of an emotionally disturbed person, including "yelling in the roadway" and "obstructing traffic."  Dkt. No. 5 at ¶¶ 5, 13.  Prior to his arrest, Plaintiff "called 911 and threaten[ed] self-destructive behavior by telling the 911 operator he was going to lay down on Lenox Avenue in the dark of

night," and once the officers were on the scene, "Plaintiff would invade the personal space of Defendant Slator."  Dkt. No. 77-10 at ¶¶ 77, 79; Dkt. No. 78-2 at 13.

Based on these facts and as set forth in Plaintiff's responses, a reasonable juror could find that it was obvious to Defendants that Plaintiff was an emotionally disturbed person with mental health disabilities that may require accommodation.

### b. Reasonableness of Officers Denying Plaintiff Alternative Treatment

"Whether a disabled individual succeeds in proving discrimination under Title II of the ADA will depend on whether the officers' accommodations were reasonable under the circumstances."  *Williams*, 121 F. Supp. 3d at 368 (citing *Waller*, 556 F.3d at 175).  "Title II of the ADA requires police officers to provide reasonable accommodations to arrestees and that any threatening or exigent circumstances should be considered when determining the reasonableness of the proposed accommodation."  *Durr*, 558 F. Supp. 3d at 32.

Defendants argue that Plaintiff was not discriminated against because Plaintiff was not denied any reasonable treatment or accommodations, and there were exigent circumstances such that Defendants' actions were reasonable.  *See* Dkt. No. 69-8 at 25-26; Dkt. No. 68-1 at 22.  The City Defendants allege that Officer Slator acted reasonably when he "used de-escalation techniques (both verbal and physical) to calm Plaintiff down" and handcuffed Plaintiff "from the front rather than the back" to accommodate Plaintiff's shoulder condition.  Dkt. No. 68-1 at 22.

Plaintiff suggests that it would have been reasonable for the officers to use two alternative treatments.  Plaintiff alleges that Defendants Silverman and Slator should have used de-escalation techniques.  *See* Dkt. No. 5 at ¶¶ 18, 42, 72, 73.  Plaintiff asserts that, "instead of being

immediately kicked in knee when the spit accidentally left Plaintiff's mouth," he should have been given "time for de-escalation" and if the spittle from his yelling was a threat then he "should have been placed in a spit mask," which "would have alleviated any of the immediate concerns of communicable diseases and thus would have allowed time for de-escalation."  Dkt. No. 77-11 at 23; Dkt. No. 78-2 at 12.

In *Butchino*, the plaintiff similarly argued that "Defendants could have accommodated his disability by allowing him to cool off."  *Butchino*, 2022 WL 137721, at *11.  The Court denied the defendant's motion for summary judgment on a finding that "[w]hether a reasonable accommodation was available and feasible is a question of fact for the jury."  *Id.*

In *Sheehan*, the court explained that the plaintiff met her "initial burden of producing evidence of the existence of a reasonable accommodation" at the motion for summary judgment stage by asserting that "the officers should have respected her comfort zone, engaged in non-threatening communications and used the passage of time to defuse the situation rather than precipitating a deadly confrontation."  *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1233 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *see also McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013) ("It is enough for the plaintiff to suggest the existence of a plausible accommodation"); *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 133 (E.D.N.Y. 2014) ("Plaintiff also bears the initial burden, albeit a light one, to produce evidence that the accommodation also is reasonable").

Second, Plaintiff alleges that he should have received a "9.41 mental health arrest for an

evaluation," or a "22.09 New York State Mental Hygiene civil arrest for treatment."  Dkt. No. 78-2 at 10.  Defendants argue that the claim for a Section 9.41 arrest is a new claim for relief and therefore should be dismissed.  *See* Dkt. No. 80 at 11.  It is not clear from Plaintiff's pleadings whether a mental health arrest can be construed as a reasonable accommodation under the circumstances, or if it is, as Defendants argue, an additional claim for relief for wrongful arrest.  Plaintiff argues that the "City Defendants mistakenly effected a criminal arrest for Plaintiff for disorderly conduct when they should have secured medical treatment for Plaintiff's medical condition."  Dkt. No. 78-2 at 15.  New York State Mental Hygiene Law § 22.09(b)(2) ("§ 22.09(b)(2)") applies when "a person who appears to be incapacitated by alcohol and/or substances to the degree that there is a likelihood to result in harm to the person or to others."  Pursuant to § 22.09(b)(2), police officers may take the person who is incapacitated by alcohol "to a treatment facility for purposes of receiving emergency services."  Given that Plaintiff was displaying signs of "having a psychotic episode," and "yelling in the roadway," a reasonable juror could find that a § 22.09(b)(2) civil arrest, instead of a disorderly conduct arrest, would have been reasonable.  In *Sage* the court denied a motion to dismiss a failure to accommodate claim because the court found that the "plaintiff became violent 'only after being threatened with arrest and shown a handcuff case."  *Sage v. City of Winooski*, No. 2:16-cv-116, 2017 WL 1100882 *4 (D. Vt. Mar. 22, 2017).  The *Sage* court noted that "the violent behavior could arguably have been avoided if the officers had acknowledged and accommodated Mr. Sage's mental illness."  *Id.*

As in *Sheehan* and *Butchino*, Plaintiff has met his burden of suggesting the existence of a plausible accommodation and therefore, summary judgment must be denied.  *See, e.g., Morales v.*

*City of New York*, No. 13 Civ. 7667, 2016 WL 4718189, *6 (S.D.N.Y. Sept. 7, 2016) (availability of accommodation was question of fact, requiring denial of summary judgment); *Wagner v. City of New York*, No. 14 Civ. 2521, 2015 WL 5707326, *7 (S.D.N.Y. Sept. 28, 2015) (availability of accommodation was question of fact, requiring denial of summary judgment).

Next, the County argues that no reasonable accommodation was available because of exigent circumstances at the time of the arrest.  *See* Dkt. No. 69-8 at 25; Dkt. No. 81 at 11 ("Plaintiff was a direct threat to the health and safety of the officers at the time of his arrest"). "Whether a disabled individual succeeds in proving discrimination under Title II of the ADA will depend on whether the officers' accommodations were reasonable under the circumstances." *Williams*, 121 F. Supp. 3d at 368.  "[A]ny threatening or exigent circumstances should be considered when determining the reasonableness of the proposed accommodation."  *Durr*, 558 F. Supp. 3d at 32.

In support of its argument, the County relies on factually distinguishable cases.  In *Waller*, the Fourth Circuit found that the officers did not violate their duty to reasonably accommodate the plaintiff during a standoff in which the plaintiff held a woman hostage while "brandishing what looked like a knife."  *Waller v. City of Danville*, 556 F.3d 171, 173 (4th Cir. 2009) (citing *Hainze*, 207 F.3d at 801).  Similarly, in *Hainze v. Richards*, the Fifth Circuit found that the officers' duty to reasonably accommodate the plaintiff's disability arose only after the plaintiff was no longer approaching third parties and officers with a knife, despite repeated orders to stop.  207 F.3d 795 (5th Cir. 2000).

Whereas in *Hainze* and *Waller* the plaintiffs were armed, and the officers reasonably

adjudged them a threat to un-armed third parties, here, Plaintiff was unarmed and already

restrained in handcuffs when Defendants allegedly kicked him. *See* Dkt. No. 5 at ¶ 19.  The

County alleges that Plaintiff created exigent circumstances when he spat towards the officers

because Plaintiff "was a drug user and in the era of AIDS and other communicable diseases, the

officers had every right to bring Plaintiff to the ground." Dkt. No 69-8 at 16.  According to the

County, "in the age of Aids and other communicable diseases, this [spit] constitutes a dangerous,

potentially fatal, situation for the officer." *Id*. at 12.  The County does not specify what

communicable diseases are lethal after surface level contact, nor do they provide support for the

claim that spit is a potentially lethal attack.  Furthermore, according to Plaintiff, spittle only left

his mouth while he was yelling and after he was already in handcuffs.  Similarly, in *Sage*, the

court denied a motion for summary judgment because the plaintiff became violent only after

being put in handcuffs. *Sage*, 2017 WL 1100882, at *4.

The County attempts to use Plaintiff's behavior at the hospital after the arrest to argue that

there were exigent circumstances at the time of the arrest. *See* Dkt. No. 69-8 at 26 ("He was

abusive to hospital staff even after being arrested and later abusive to Oneida police when he was

detained there").  Plaintiff's post-arrest actions cannot be used as a post hoc justification for the

manner of effectuating the arrest.

Finally, the County argues that Plaintiff cannot show that his injury was caused by

Defendants' alleged failure to provide reasonable accommodations because his failure to take

medication was a superseding cause. *See* Dkt. No. 69-8 at 24.  However, as discussed above,

failure to take bipolar medication may be consistent with symptoms of bipolar disorder.  Plaintiff

has sufficiently alleged facts showing that he sustained injury from being kicked to the ground instead of receiving reasonable accommodations that a reasonable juror could find causation. Accordingly, the Court denies Defendants' motions for summary judgment as to this claim.

**D.      Assault**

The County Defendants assert that Plaintiff's state law claims against Defendant Silverman in his individual capacity are barred by the statute of limitations under N.Y. CPLR § 215(1).  Dkt. No. 69-8 at 27.  The Court has already dismissed Plaintiff's state law claims against Deputy Silverman in his individual capacity in the Order.  *Durr*, 558 F. Supp. 3d at 38.

At issue are Plaintiff's assault claims against Defendant Silverman in his official capacity and Defendant Madison County.  Plaintiff alleges that Defendant Silverman assaulted Plaintiff while he was effectuating Plaintiff's arrest.  Dkt. No. 5 at ¶¶ 84-100.

"The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'"  *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (citing *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)).  To prevail on an assault claim in the law enforcement context, a plaintiff must demonstrate that the officer's conduct "was not reasonable within the meaning of the New York statute concerning justification of law enforcements use of force in the course of their duties."  *Tardif*, 991 F.3d, at 410 (citing *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005); *accord Jamison v. Metz*, 541 Fed. 15, 20 (2d Cir. 2013)).  New York Penal Law § 35.30(1) "requires the jury to conduct precisely the same analysis as does the reasonableness standard" under the Fourth Amendment.  *Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988).

The County Defendants assert that the assault claim should be dismissed because "Deputy Silverman's actions were objectively reasonable given Durr's inability to control his actions."[5] Dkt. No. 69-8 at 29.  However, as discussed above in regard to the excessive force claims, it is not clear that the use of force was objectively reasonable because there are questions of fact about whether Plaintiff was resisting arrest or threatening the officers.

The County Defendants further state that "the qualified immunity analysis is also applicable to state law claims," but do not present any New York state case law to support a finding of qualified immunity.  Dkt. No. 69-8 at 29; *see Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) (finding that "the only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution").  Qualified immunity is an affirmative defense; therefore Defendants bear the burden of proving that qualified immunity applies.  *See Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).  Defendants must do more than make a conclusory statement that "Silverman is entitled to qualified immunity given the exigent facts and circumstances of this case."  Dkt. No. 69-8 at 29.  Accordingly, Defendant Silverman is not entitled to qualified immunity.  The County Defendants' motion for summary judgment on Plaintiff's assault claims is denied.

---

[5] Plaintiff construes Defendants' argument as saying that Plaintiff's assault claim should be dismissed as duplicative of the excessive force claims.  *See* Dkt. No. 77-11 at 28 ("The District Court should not dismiss the state law assault and battery claims as duplicative").  However, the County Defendants state that "New York assault and battery and Section 1983 excessive force claims are 'substantially identical,'" for the purposes to showing a similar reasonable use of force analysis; they do not appear to argue that Plaintiff's claims should be dismissed because they are duplicative.  Dkt. No. 69-8 at 28.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that the City Defendants' motion for summary judgment (Dkt. No. 68) is **DENIED;** and the Court further

**ORDERS** that the County Defendants' motion for summary judgment (Dkt. No. 69) is **DENIED;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  November 30, 2023
      Albany, New York

Mae A. D'Agostino
U.S. District Judge